**Frederic W. BERTHOFF, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. CIV.A.97–10883–WGY.

United States District Court, D. Massachusetts.

April 9, 2001.

Michael C. Bourbeau, Boston, MA, for Frederic W. Berthoff, Petitioner.

Andrew Levchuk, United States Attorney's Office, Springfield, MA, Thomas C. Frongillo, United States Attorney's Office, Boston, MA, for United States of America, Respondent.

## REPORT

YOUNG, Chief Judge.

[The] executive take[s] idealistic, energetic, ambitious young men and[, in elected politics,] turn[s] them into whores in five years; the judiciary takes old, tired, experienced whores and turns them into virgins in five years.[1]

---

1. Richard Neely, *How Courts Govern America* (1981) (The Honorable Richard Neely was

The role of the American jury, the central vehicle for citizen participation in the legal system, is being sharply limited by new laws, court rulings and a legal culture that is moving away from trials as a method of resolving disputes.[2]

These observable—but apparently unrelated—phenomena are, in the main, true. This report explores their relationship in the context of federal criminal sentencing.

This report necessarily involves an explanation of my[3] sentencing practices. It makes most sense to start at the beginning.

Along with five associates, ... Frederic W. Berthoff ["Berthoff"] was indicted on seventeen felony charges. Following a jury trial, he was convicted of conspiring to possess marijuana and hashish with intent to distribute, 21 U.S.C. §§ 841, 846 (Count 1), possessing hashish with intent to distribute, *id.* § 841 (Count 2), [tax evasion, 26 U.S.C. § 7206(1) (Count 3),] ... money laundering, 18 U.S.C. § 1956(a) (Counts 7–14), [and witness tampering, 18 U.S.C. § 1512(b)(3) (Count 16) ].

On several occasions between 1984 and 1986, Berthoff enlisted Brad Welch ["Welch"], Stephen Marble and Albert Mello ["Mello"] to transport marijuana and its proceeds from Florida and Arizona to Massachusetts. Berthoff himself went along on at least one trip. In addition, between 1984 and 1991 Berthoff sold large quantities of marijuana to or through Welch, Mello, Thomas Cimeno ["Cimeno"], and Wes Schifone ["Schifone"].

During the 1986–87 period, Berthoff expanded the scope of his illegal drug operation by arranging to finance and import 4,000 pounds of hashish from Portugal for distribution in the United States. Some of the hashish was stored at Berthoff's Massachusetts residence. It was sold both within Massachusetts and elsewhere. In 1988, Scott Holland ["Holland"], a coconspirator in the hashish importation, was arrested on unrelated criminal charges. Shortly thereafter, Berthoff reassured another coconspirator, Cimeno, that Holland would not inform on them because Berthoff was selling Holland's share of the hashish, and holding the proceeds for Holland.

In November 1988, Berthoff and Mello traveled to Zurich, Switzerland, where they opened a bank account and deposit-

---

then Chief Justice of the Supreme Court of Appeals of West Virginia), *quoted in* Rudolph Kass, *Courts Make Calls Pols Won't Touch,* Boston Herald, Nov. 28, 2000, at 27 (The Honorable Rudolph Kass, retired, was a Justice of the Massachusetts Appeals Court). This Court's citation to nonlegal sources is not unique; courts generally are increasingly citing nonlegal sources. *See generally* Frederick Schauer & Virginia J. Wise, *Nonlegal Information and the Delegalization of Law,* 29 J. Legal Stud. 495, 500–13 (2000).

**2.** William Glaberson, *Juries, Their Powers Under Siege, Find Their Role Is Being Eroded,* N.Y. Times, Mar. 2, 2001, at A1.

**3.** Although it's my general practice to speak in the third person, i.e., "the Court," in legal opinions, as this seems best to convey the institutional functions of the judiciary and emphasize that in legal analysis district judges ought be thought of as generally fungible in order that the law speak with one voice, here I choose to speak in the first person when appropriate, because sentencing, despite all the efforts to cabin individual discretion, remains, at bottom—in the complete absence of a common law of sentencing—probably the most intensely personal of judicial decisions. Moreover, as will become apparent, what is asked of me here requires explication of my individual approach to important sentencing decisions and the rather more surreal exposition of what I would have done had I been confronted with issues which never arose.

ed $90,000 in drug proceeds. Upon his return to Massachusetts, Berthoff wrote the Swiss bank and authorized a $75,000 withdrawal and wire transfer to Mello in Massachusetts. After Mello received the transfer, he drove to Key West, Florida, and deposited the proceeds in a bank account previously established for the purpose. The funds eventually were transferred by Mello into a corporate bank account controlled by Berthoff. On another occasion, Berthoff made a $100,000 interest-free loan from illegal drug proceeds to Cimeno, insisting that Cimeno repay the loan with checks identifying the payments as returns on a real estate investment.

*United States v. Berthoff,* No. 94–1719, 70 F.3d 1253, 1995 WL 703506, at *1 (1st Cir. Nov.29, 1995) (unpublished table decision) (footnote omitted).[4]

**Berthoff** is the central, moving force in this criminality, the "kingpin" if you will. He was tried with co-defendants William Tibolt ("Tibolt") and Holland. All were convicted, although not on all counts. I sentenced Berthoff to twenty-one years' imprisonment on Counts One and Two; three years' imprisonment on Count Three; twenty years' imprisonment on Counts Seven through Fourteen; and ten years' imprisonment on Count Sixteen, with the sentences on all counts to run concurrently.[5]

**Cimeno,** the individual next to Berthoff most culpable in this conspiracy, pleaded guilty prior to trial and cooperated, his testimony being quite important to the conviction of Berthoff and absolutely vital to the conviction of Holland. I sentenced him to three years' imprisonment.

**Mello,** like Cimeno an important figure in this conspiracy, also pleaded guilty and cooperated, his testimony being less important than that of Cimeno. I sentenced him to three years' imprisonment.

**Schifone,** a lesser figure, pleaded guilty and cooperated. I sentenced him to five years' probation, the first nine months to be spent in house arrest.

**Tibolt** went to trial. Accepting his statute of limitations argument, the Court granted him a mid-trial judgment of acquittal on Counts One and Two. Tibolt was convicted of money laundering, and I sentenced him to eight years' imprisonment.

The hapless **Holland,** excitable and somewhat spaced-out, tried to manage his own defense. Skipper of the vessel that made the drug run, Holland professed nothing more than a desire to be reunited with his children, Sunshine and Jelly Bean, and had been advised that he had an iron-clad statute of limitations defense. At trial, however, Cimeno came up with some new testimony that scotched that defense. After his conviction, I sentenced him to five years' imprisonment. Interestingly, it appears that Holland has made the most successful rehabilitation.

---

4. For the propriety of citing an unpublished decision, see *Anastasoff v. United States,* 223 F.3d 898, 899–905 (8th Cir.) (R. Arnold, J.) (holding that unpublished opinions have precedential effect), *vacated as moot,* 235 F.3d 1054 (8th Cir.2000), *Giese v. Pierce Chem. Co.,* 43 F.Supp.2d 98, 103 (D.Mass.1999) (relying on unpublished opinions' persuasive authority), and Richard S. Arnold, *Unpublished Opinions: A Comment,* 1 J.App. Prac. & Process 219 (1999).

5. **Joseph H. Catalucci,** the leader of an overlapping, closely-related drug conspiracy existing during the same time period and also involving Stephen Marble, pleaded guilty before Judge Freedman and on September 29, 1993 was sentenced by him to fifteen years and eight months imprisonment.

Berthoff appealed but his conviction was affirmed. He commenced the present case, a habeas proceeding pursuant to 28 U.S.C. § 2255, on April 23, 1997.

On December 9, 1998, concerned over the far-reaching implications of a then-recent decision of the Court of Appeals for the First Circuit—*United States v. Rodriguez*, 162 F.3d 135, 150–53 (1st Cir.1998), *cert. denied*, 526 U.S. 1152, 119 S.Ct. 2034, 143 L.Ed.2d 1044 (1999)—I granted Berthoff a certificate of appealability after denying his petition for habeas corpus. The Court of Appeals has now vacated the certificate of appealability and remanded the matter to this Court, *Berthoff v. United States*, No. 99–1276, 201 F.3d 426, 1999 WL 1295839 (1st Cir. Dec.22, 1999) (unpublished table decision), with instructions further to consider whether a certificate of appealability ought issue concerning the adequacy of Berthoff's representation by trial counsel and, if so, to explain my reasoning on certain points, *id.* at *1–*2.

After further hearing and argument, this Court again denies a certificate of appealability as to the adequacy of Berthoff's representation by trial counsel but grants a certificate of appealability on the more general question whether the conduct of the government and this Court has unconstitutionally burdened Berthoff's Sixth Amendment right to a trial by jury.

Although this result obviates the need to respond to the questions raised by the Court of Appeals, a proper respect for the concerns of that court and a frank recognition that analysis must necessarily proceed through these issues before confronting the certified issue, impels this Court to explain its reasoning in answer to the questions posed. Let's see if I can get it right this time.

## THE COURT OF APPEALS' QUESTIONS

The Court of Appeals poses the following five questions:

1. [W]hether [Berthoff] would have pleaded guilty had he received advice regarding the effect of U.S.S.G. § 3E1.1 and/or notification of the full contents of AUSA Pucci's letter;
2. [W]hether and to what extent the court would have awarded an acceptance of responsibility reduction in the event of a timely guilty plea in this case;
3. [W]hether AUSA Pucci's letter to Attorney McMenimen constituted a plea offer within the meaning of [*United States v.*] *Rodriguez Rodriguez*, 929 F.2d [747,] 752 [ (1st Cir. 1991) ];
4. [W]hy the failure to pass along the contents of AUSA Pucci's letter was or was not deficient under *Strickland*'s first prong; and
5. [W]hy the failure to advise [Berthoff] regarding the effect of U.S.S.G. § 3E1.1 was or was not deficient under *Strickland*'s first prong.

*Id.* at *2. I shall address them *seriatim.*

1. Would Berthoff have pleaded guilty had he received advice regarding the effect of U.S.S.G. § 3E1.1 and/or notification of the full contents of AUSA Pucci's letter?

No. At least I don't think so. Whatever Berthoff may say now, prior to the trial everyone concerned regarded this case as potentially defensible. The government had significant credibility problems with its co-conspirator witnesses, serious statute of limitations problems, and along the same lines, serious problems showing why the alleged offenses would be subject to the Sentencing Guidelines.[6] Berthoff well

6. In general, the Sentencing Guidelines only apply to offenses committed after November

understood that he could get a better deal from the government were he to plead guilty prior to trial.

Perhaps more to the point of the present question, the sentence reduction potentially available for "acceptance of responsibility" would not, in my view, have induced Berthoff to plead guilty. Referring to the pre-sentence report, one sees that Berthoff had a total offense level of thirty-seven and a criminal history category of I. Thus, he faced a guidelines sentencing range of not less than seventeen years and six months, to not more than twenty-one years and ten months. Reducing this range by three levels results in a range of not less than twelve years and seven months, to not more than fifteen years and eight months. U.S.S.G. 5A Table (sentencing table) (Nov. 1, 1992). Thus, at a minimum, Berthoff was facing double-digit time on a case in which he stood a not-insignificant chance of acquittal of the most serious charges. It must also be remembered that it was precisely during this same period that Judge Freedman sentenced Joseph H. Catalucci ["Catalucci"]—probably the individual situated most similarly to Berthoff—to fifteen years and eight months after a guilty plea. Since the Catalucci sentence was common knowledge in the weeks immediately prior to trial, I believe Berthoff well knew the appropriate discount he might receive for pleading guilty.

No one expected that Berthoff would plead out simply to get the "acceptance of responsibility" discount. The tenor of the Pucci letter is itself the best confirmation of this fact. Even though Berthoff was the kingpin here, Pucci was suggesting "cooperation" in order to break out of the Sentencing Guidelines corral into the wide open discretionary spaces of section 5K1.1 "substantial assistance" reductions.

The American College of Trial Lawyers has, after careful study, concluded that "[e]mpirical evidence establishes that prosecutors are making substantial assistance determinations for reasons unrelated to whether the defendant's assistance is substantial." American College of Trial Lawyers, *Report and Proposal on Section 5K1.1 of the U.S. Sentencing Guidelines* 17 (1999) [hereinafter ACTL Report I].[7] This is certainly true in this District where a study has shown that substantial assistance departures correlate to the historically strict departure jurisprudence found in the First Circuit. Lisa M. Farabee, *Disparate Departures Under the Federal Sentencing Guidelines: A Tale of Two Districts*, 30 Conn. L.Rev. 569, 587–93 (1998) (comparing large number of 5K1.1 departures in this District with the small number of such departures in the District of Connecticut within the Second Circuit, which has a well-developed downward departure jurisprudence). In sum, prosecutors not infrequently use substantial assistance departures to obtain guilty pleas where the evidence in the prosecution's case is weak or where there is some other defect in the case. *See* Vincent L. Broderick, *Flexible Sentencing and the Violent Crime Control Act of 1994*, 7 Fed. Sentencing Rep. 128, 129, 131 (1994); *see also* Daniel W. Stiller, *Section 5K1.1 Requires the Commission's Substantial Assistance*, 12 Fed. Sentencing Rep. 107, 107 (1999) ("Section 5K1.1 brings a unique degree of arbitrariness to federal sentencing"). "[E]mpirical studies recently released by the Sentencing Commission staff indicate

---

1, 1987. *See* 18 U.S.C. § 3551 note.

7. For emphatic confirmation of the conclusion that substantial assistance departures actually have little or nothing to do with law enforcement needs, see the Substantial Assistance Departure Rate Chart in the ACTL Report I, *supra*, at 23. It is reproduced below as Appendix A to this Report.

that personal characteristics, such as the gender and race of the defendant, play a role in the frequency with which prosecutors make Section 5K1.1 motions." ACTL Report I, *supra*, at 19.

Was any of this going on here? I can't tell and at this remove after the trial and sentencing and the concomitant striking change in the positions of the principal actors, even the most exhaustive hearings on the point would yield suspect results and it is pretense to think otherwise.

More to the point, I believe Berthoff would not have pleaded guilty in any event

in light of his substantial defenses because I have a reputation[8]—apparently deserved[9]—for sentencing harshly.[10] *See* Chantale LaCasse & A. Abigail Payne, *Federal Sentencing Guidelines and Mandatory Minimum Sentences: Do Defendants Bargain in the Shadow of the Judge?*, 42 J.L. & Econ. 245, 245 (1999) ("Surprisingly, we find that the amount of variation attributable to the judge for trial sentences increases post-reforms. Consistent with this result, defendants continue to bargain in the shadow of the judge post-reforms . . . .").

---

**8.** The *Almanac of the Federal Judiciary* reports from the lawyers' evaluation that:

> Lawyers said Young is very tough during sentencing. 'If the defendant is convicted he's going away for a long time.' 'He's a heavy hitter in sentencing.' 'He's going to whack at the criminal defendant on sentencing, or even on a plea. If you have agreed to a plea that's on the low end, he may not accept the agreement if he doesn't think it's right.' 'He's going to be at the high end of the guidelines in sentencing.' 'He's not likely to listen to departure arguments.'

> 1 *Almanac of the Federal Judiciary (First Circuit)* 8 (2000).

**9.** U.S. Sentencing Comm'n, *Federal Sentencing Statistical Report Prepared for the Honorable William G. Young* (2000) (providing individual district and circuit court statistics on length of sentences imposed and guideline departure comparisons).

**10.** I make this considered admission only after the most intense soul searching. I have now served as a state and federal judge for twenty-three years, and to the extent that a person can know himself, I have in every case endeavored to fashion a just but individualized sentence. ·My views concerning criminal sentencing in general are a matter of record. *United States v. Angiulo*, 852 F.Supp. 54, 57–59 (D.Mass.1994) (citing *Commonwealth v. Silvia*, Crim. Nos. 12265–68 [Bristol Super. Ct. Mar. 26, 1984] [sentencing memorandum], *aff'd sub nom. Commonwealth v. Cordeiro*, 401 Mass. 843 [1988] ), *aff'd*, 57 F.3d 38 (1st Cir.1995). Yet it is a matter of intense embarrassment to me that, serving among

America's finest and most thoughtful district court judges, I am among the most severe. I am candidly at a loss to understand how this could be so. Whenever I have thought myself free to do so, I have "crowded to the middle" only to be reversed for not following the guidelines. *United States v. Martin*, No. 98–10328 (D.Mass. Sept. 10, 1999), *vacated*, 221 F.3d 52 (1st Cir.2000).

It is no answer, however, simply to say "the guidelines made me do it." Yet, absent further consideration of the constitutionality of a sentencing system that is today corrupting all those who must enforce and interpret it, I can see no principled way to bend the plain meaning of its intricacies. *Contra Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 2368–69, 147 L.Ed.2d 435 (2000) (Thomas, J., concurring).

Some judges, of course, see no problems with a mechanistic approach to sentencing:

> I like the Guidelines . . . . Once I have figured out the range, I always sentence at the very bottom; I never depart up or down, unless it's a guided departure like substantial assistance or acceptance of responsibility. This is true whether a defendant has pleaded guilty or proceeded to trial; generally, I have found that the bottom end of a given Guideline range sufficiently captures a defendant's criminal culpability, and I very seldom run across a case so unusual as to warrant departure. If the sentence seems too harsh or too light, I no longer feel responsible.

Alex Kozinski, *Carthage Must Be Destroyed*, 12 Fed. Sentencing Rep. 67, 67 (1999).

In short, I am convinced that Berthoff would have chosen to take his chances at trial even had he been fully apprised of AUSA Pucci's letter and the potential benefit of an "acceptance of responsibility" reduction. I answer the first question "no."

2.  Would the Court have awarded an acceptance of responsibility reduction in the event of a timely guilty plea in this case and, if so, to what extent?

First, I assume the use of the word "timely" in this question means with reasonable promptness after AUSA Pucci's letter. No one suggests that either Berthoff or his counsel ever thought about a plea at any earlier time, and as Berthoff was himself the kingpin of this criminality, he had every reason to expect that he was the last person the government would approach concerning a plea.

Second, I do not believe Berthoff has ever—before, during, or after trial and up until this day—truly accepted responsibility for the enormity of his criminal conduct, the lives he has irrevocably scarred and ruined, and law enforcement resources that had to be devoted to his apprehension. Despite whatever he may say now, I find that Berthoff—a person of some intellect and capacity for reflection—continues to view his criminality as a rather extended romantic outlawry and himself as more sinned against than sinning.

Nevertheless, in answer to the second question, I report that, had Berthoff timely pleaded guilty, I would at the time of sentencing have given him one or two (but not three) levels off for "acceptance of responsibility." U.S.S.G. § 3E1.1. This would have resulted in a sentence of from fourteen years to seventeen years and six months (for a two-level reduction) or a sentence of from fifteen years and eight months to nineteen years and seven months (for a one-level reduction). U.S.S.G. 5A Table (sentencing table) (Nov. 1, 1992).

Were Berthoff's conviction to be vacated, however, and were he now to plead and come before this Court for resentencing, I would take the full three levels off for so-called "acceptance of responsibility." This has nothing whatever to do with Berthoff's present mental state. Rather, I have simply come to accept that, just as the phrase "substantial assistance" has become so overworked as to be meaningless other than as a means for subverting the provisions of the Sentencing Guidelines believed by some to be too draconian, so too "acceptance of responsibility" means nothing more than that the plea has saved the government the expense and uncertainty of a jury trial. Both concepts are today paid little more than lip service in light of their real value as bargaining chips in plea negotiations. So it is that in order to promote certainty in such negotiations I today routinely deduct the requisite levels for "acceptance of responsibility" upon a plea with little regard for the defendant's actual comprehension of his guilt and remorse.[11]

3.  Does AUSA Pucci's letter to Attorney McMenimen constitute a plea offer within the meaning of *United States v. Rodriguez Rodriguez*, 929 F.2d 747, 752 (1st Cir.1991)?

■ No. The letter by its very terms can be stretched no further than an invita-

---

**11.** I make an exception where, following his plea, a defendant continues his criminality, *United States v. Saxena*, No. 98–10298, Tr. of Sentencing Hr'g at 3–10 (June 28, 1999), or plays fast and loose with the Probation Department, *United States v. Bernett*, No. 98–10328, Tr. of Sentencing Hr'g at 20 (Nov. 23, 1999).

tion to negotiate. There is here no "offer" capable of acceptance, and the circumstances make clear that, at most, the letter is the opening bell for a round of hard bargaining, not the closing position.

4. Was the failure to pass along the contents of AUSA Pucci's letter deficient under *Strickland*'s first prong?

■ No. Berthoff well knew, wholly apart from AUSA Pucci's letter, that if he entered into plea negotiations he was in a position to exact some concessions from the government regarding its sentencing recommendation. Moreover, the generality of the Pucci letter adds nothing of substance to the background of information with which Berthoff was already operating. To declare that his counsel's performance fell so markedly below that to be expected of the criminal defense bar as to invoke *Strickland*'s first prong is tantamount to a rule that every communication from the government must be passed on to a defendant *in haec verba*. As the Court of Appeals has recognized, *United States v. Santo*, 225 F.3d 92, 102 (1st Cir.2000) (Schwarzer, J., dissenting), there can be too much information cluttering a decision whether to plead.

5. Was the failure to advise Berthoff regarding the effect of U.S.S.G. § 3E1.1 deficient under *Strickland*'s first prong?

■ Yes. Surely it is not too much to expect defense counsel to advise a client of the expected results of the mandated mathematical calculations of the Sentencing Guidelines should the client decide to plead guilty. In today's utterly formula-driven sentencing regime, such failure is manifestly deficient.

Here, of course, there was no prejudice because, as this Court has already found,

Berthoff would not have pleaded guilty even had he been fully advised.

This Court respectfully submits these answers to the questions posed by the Court of Appeals, and in light thereof, again denies a certificate of appealability predicated on any deficiency on the part of trial counsel.

## SUPPLEMENTAL PLEADINGS

■ After the First Circuit vacated and remanded this Court's decision to grant a certificate of appealability, Berthoff filed a Supplemental Memorandum and Amendment to Petition and a Second Supplemental Memorandum and Request for Further Hearing, in which he challenged his sentence under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), arguing that the question of drug quantity was neither submitted to the jury nor proven beyond a reasonable doubt. Without reaching the merits of Berthoff's *Apprendi* challenge, the Court denies Berthoff's amendment because this Court lacks the authority to allow Berthoff to amend his petition after the Court has rendered its judgment. *Ward v. Whitley*, 21 F.3d 1355, 1360 (5th Cir.1994). Although the First Circuit vacated this Court's decision to grant a certificate of appealability, it did not vacate this Court's judgment denying Berthoff habeas relief. Nor has Berthoff sought relief from this Court's judgment pursuant to Federal Rule of Civil Procedure 60(b). This Court is without authority to allow an amendment to the pleadings after judgment has been rendered and while the judgment still remains in force.

■ Even if this Court had jurisdiction to allow the amendment, it would not because the asserted *Apprendi* claim would ultimately be futile as time barred. The procedure for amending habeas petitions is governed by Federal Rule of Civil Proce-

dure 15. 28 U.S.C. § 2242 (indicating that habeas petitions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); Rules Governing Section 2255 Proceedings for the United States District Courts Rule 12 ("If no procedure is specifically prescribed by these rules, the district court may proceed in any lawful manner not inconsistent with these rules ... and may apply the ... Federal Rules of Civil Procedure ...."); *Rogers v. United States*, 180 F.3d 349, 352 n. 3 (1st Cir.1999), *cert. denied*, 528 U.S. 1126, 120 S.Ct. 958, 145 L.Ed.2d 831 (2000). Although Rule 15 provides that the court should allow amendment when justice so requires, when the proposed amendment would be futile, the district court need not allow it. *Judge v. City of Lowell*, 160 F.3d 67, 79 (1st Cir.1998).

■ Berthoff's *Apprendi* claim is time barred by the applicable one-year statute of limitations.[12] Berthoff is time barred under section 2255(1) because his judgment of conviction became final on November 29, 1995, almost five years before he filed his proposed amendment. Sections 2255(2) and 2255(4) are not available to Berthoff because there was neither a governmental impediment to, nor newly discovered facts supporting, his proposed amendment. If Berthoff's amendment were to be considered timely he would have to rely on either section 2255(3) or the relation back doctrine. Unfortunately, neither of these suffices to warrant granting his amendment. The Court addresses them in turn.

■ First, Berthoff could attempt to seek cover under section 2255(3), which provides that the limitation period runs from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(3). Although some courts have held that the new limitations period should always run from the date of the Supreme Court decision creating the new right (here, June 26, 2000), regardless of whether the right simultaneously was made retroactive, this interpretation ignores the second clause of section 2255(3) and often would allow the extended limitations period to expire before the asserted right is made retroactive by a subsequent decision. Moreover, to interpret section 2255(3) as starting a new limitations period on a date other than when the right is made retroactive on collateral review would unfairly bar petitioners from obtaining warranted relief using successive petitions because of the stringent gateway procedures for successive petitions. For present purposes, this Court need only indicate that it believes the better interpretation of section 2255(3) is that the new limitations period should run from the date on which either the Supreme Court or the controlling circuit

---

**12.** Section 2255 provides, in relevant part:

A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

**60**

court holds the new right to be retroactive on collateral review.[13] In light of this, section 2255(3) is inapplicable because neither the First Circuit nor the Supreme Court has made *Apprendi* retroactive on collateral review.[14]

█ Second, Berthoff could argue that his amended petition should relate back to his original petition, making the amended petition timely under section 2255(1). Rule 15(c) provides in relevant part that an amendment should relate back to the original petition when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R.Civ.P. 15(c). Assuming that Rule 15(c) is applicable to amendments to habeas petitions,[15] the *Apprendi* claims raised in the

proposed amendment would not relate back to the original petition. Berthoff's first petition raised allegations of ineffective assistance of counsel on three grounds: (1) failure to enter into meaningful plea negotiations; (2) failure to present mitigating evidence regarding the three-level role increase under U.S.S.G. § 3B1.1; and (3) failure to expose a potential conflict of interest. Pet. at 5–6. None of these claims arises from the same set of facts that potentially give rise to Berthoff's *Apprendi* claim except to the extent that they all revolve around the same sentencing proceeding. Nor are the claims focused on the same timing or type of events. To interpret Rule 15(c) as allowing the amendment to relate back would frustrate not only the purpose behind the rule but also section 2255's limitations.[16] The ratio-

**13.** The majority of circuits to have considered the question have held that the section 2255(3) new limitations period does not begin until either the Supreme Court or the controlling circuit court has held that the relevant right applies retroactively on collateral review. *Compare United States v. Lopez,* 233 F.3d 884, 885 (5th Cir.2000) (holding that section 2255[3] does not apply where there is neither Supreme Court nor controlling circuit court precedent making the relevant right retroactive on collateral review), *Haugh v. Booker,* 210 F.3d 1147, 1150 (10th Cir.2000) (holding that section 2255[3] begins a new limitations period starting on the date the right was made retroactive, but not deciding whether the Supreme Court must determine retroactivity or if a circuit court decision can start the limitations period), *United States v. Valdez,* 195 F.3d 544, 547 & n. 7 (9th Cir.1999) (same), *United States v. Lloyd,* 188 F.3d 184, 188 (3d Cir.1999) (same), *and In re Vial,* 115 F.3d 1192, 1197 & n. 9 (4th Cir.1997) (noting in dicta that new limitations period does not begin to run until right is made retroactive by the Supreme Court), *with Nelson v. United States,* 184 F.3d 953, 954, 955 & n. 2 (8th Cir.) (holding that new period begins from date of Supreme Court decision initially recognizing the new right and that merit based question of retroactivity is necessarily incorporated into question of

limitations), *cert. denied,* 528 U.S. 1029, 120 S.Ct. 549, 145 L.Ed.2d 427 (1999), *and Triestman v. United States,* 124 F.3d 361, 371 n. 13 (2d Cir.1997) (noting that new limitations period begins to run on date of Supreme Court decision that recognizes new right whether or not it is made retroactive).

Even if section 2255(3) requires this Court independently to engage in a retroactivity analysis under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), this Court has serious concerns that *Apprendi* does not satisfy *Teague*'s stringent standards for retroactivity.

**14.** This Court need not resolve the question of which court must make *Apprendi* retroactive to trigger section 2255(3) because neither the First Circuit nor the Supreme Court has made *Apprendi* retroactive.

**15.** For a discussion of the potential conflict between the liberal policy of Rule 15 and the strict procedural requirements of section 2255, see *United States v. Thomas,* 221 F.3d 430 (3d Cir.2000), which discussed and rejected the potential conflict between section 2255's limitations period and Rule 15(c), *id.* at 434–36.

**16.** A majority of the courts that have considered Rule 15(c) in the context of habeas peti-

nale behind allowing amendments to relate back stems from the notion that once the party is placed on notice of the underlying factual occurrence, the party has received the benefit of the statute of limitations. 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1497, at 76–79 (2d ed.1990). To allow petitioners' amendments to relate back solely because they involve the same trial or the same sentencing does not provide the government with sufficient notice to warrant circumvention of the statute of limitations. In essence, the amended petition presents entirely new claims with factually independent bases. Moreover, such a broad interpretation of Rule 15(c) would be entirely inconsistent with the limitations established in section 2255. *United States v. Pittman*, 209 F.3d 314, 318 (4th Cir.2000); *United States v. Duffus*, 174 F.3d 333, 337–38 (3d Cir.), *cert. denied*, 528 U.S. 866, 120 S.Ct. 163, 145 L.Ed.2d 138 (1999). Thus, because Berthoff's *Apprendi* claim differs in its underlying factual bases in both time and type, it does not relate back to his original claim.

## GRANTING THE CERTIFICATE OF APPEALABILITY

> For everything there is a season, ... a time to keep silence, and a time to speak.[17]

Once again, however, this Court grants a certificate of appealability so the Court of Appeals may consider whether the conduct of the prosecutor or this Court in this case unduly and unconstitutionally burdened Berthoff's Sixth Amendment right to trial by jury. I respectfully suggest that it has.

Here's why.

### A. Fact Bargaining

Although charge bargaining is an inescapable concomitant of any criminal justice system that encourages pleas, it is thought acceptable because we expect the Executive to enforce the laws, and thus to determine who to charge, with what, and when to drop, dismiss, or nol pros a pending charge. Moreover, the results of charge bargaining are public—i.e., when the sweeping original indictment is dismissed in favor of the lesser superceding information, those pleadings are all matters of record.[18] Absent malfeasance, the Judiciary has nothing to say about charge bargaining and, quite appropriately, it says

---

tions have concluded that the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings. *Compare Thomas*, 221 F.3d at 436 (Rule 15[c] allows habeas amendment to relate back as long as it does not add "entirely new claim"), *Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir.2000) (holding that amendment did not relate back because ineffective assistance of counsel claims did not arise out of "same set of facts"), *cert. denied*, — U.S. —, 121 S.Ct. 1232, 149 L.Ed.2d 141 (2001), *United States v. Pittman*, 209 F.3d 314, 317–18 (4th Cir.2000) (holding that claims did not relate back because they involved separate occurrences of "both time and type"), *and United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir.1999) (holding that

amendment did not relate back because ineffective assistance of counsel claims did not arise out of "same set of facts" and involved separate occurrences of "both time and type"), *with Williams v. Vaughn*, 3 F.Supp.2d 567, 570–71 (E.D.Pa.1998) (stating without further reason that amendment related back because it arose from same occurrence— namely the same trial and sentencing phases).

17. *Ecclesiastes* 3:1, 3:7.

18. Appendix B sets forth such data for the District of Massachusetts from January 1998 through December 2000, listing all informations filed during that period. Superceding informations have been compared with the original indictment. Appendix B speaks for itself.

nothing. If the public senses that the laws are not aggressively enforced, then its remedy is the ballot box.

Fact bargaining [19] is different. It is expressly condemned by the Sentencing Guidelines,[20] premised as they are on careful judicial factfinding concerning a defendant's "relevant conduct" in order to derive "real offense" sentencing.[21] Fact bargaining is thus secret, taking place between prosecution and defense counsel out of public scrutiny. What's more, it involves a fraud on the court as the government's recital of material facts during the plea colloquy and at sentencing necessarily must omit or at minimum gloss over facts material to sentencing.

Nevertheless, because certain material "facts," so called, now mathematically drive every sentencing decision, fact bargaining is today central to plea negotiation in federal court. Everyone involved knows it.[22] Prosecutors and defense counsel are

---

**19.** All plea negotiations, of course, necessarily involve an assessment of the strengths or weaknesses of a case, the credibility of witnesses, their vulnerability to impeachment, their basic presentability, and a host of related details. "Fact bargaining," as I use the term, means the knowing abandonment by the government of a material fact developed by law enforcement authorities or from a witness expected to testify in order to induce a guilty plea. It usually involves ignoring a quantity of drugs or the possession or use of a firearm reasonably attributable to a defendant and forming part of his or her relevant conduct. It encompasses the still more execrable practice of taking two similarly situated defendants and reducing the drug quantity for the one who is willing to plead but attributing the full drug quantity to the one who goes to trial.

Compare U.S.S.G. § 1B1.8(a), which excludes from the guidelines calculation of a cooperating defendant information learned for the first time by the government from that defendant should the cooperation agreement so provide. Note, however, that "[t]his provision does not authorize the government to withhold information from the court ...." U.S.S.G. § 1B1.8 n. 1.

**20.** U.S.S.G. § 6B1.4(a)(2); *id.* § 6B1.4 cmt. ("[I]t is not appropriate for the parties to stipulate to misleading or nonexistent facts, even when both parties are willing to assume the existence of such 'facts' for purposes of the litigation.").

**21.** U.S.S.G. § 1A4(a) (Policy Statement on "Real Offense vs. Charge Offense Sentencing"); *id.* §§ 1B1.2, 1B1.3.

**22.** "Studies show that bargaining in contravention of strict Guidelines requirements, including 'fact bargaining,' occurs in a large percentage of cases." American College of Trial Lawyers, *Proposed Modifications to the Relevant Conduct Provisions of the United States Sentencing Guidelines* 28 (forthcoming 2000) [hereinafter ACTL Report II]; *see also* Probation Officers Advisory Group, *Probation Officers Advisory Group Survey*, 8 Fed. Sentencing Rep. 303, 303 (1996) ("[O]nly 18.5% of the respondent districts report that all calculations set for[th] in the agreement are supported by accurate and complete offense facts in 80% or more of the cases, while 39.5% report that this occurs 50% or less of the time."). Specifically, "[s]tudies conducted by Professor Stephen Schulhofer and former Commissioner Ilene Nagel have found that bargaining in contravention of strict Guidelines requirements, including relevant conduct facts, occurs in at least 20–35% of cases resolved through guilty plea." ACTL Report II, *supra*, at 28 n. 180 (citing Ilene H. Nagel & Stephen J. Schulhofer, *A Tale of Three Cities: An Empirical Study of Charging and Bargaining Practices Under the Federal Sentencing Guidelines*, 66 S. Cal. L.Rev. 501, 534, 543 [1992], and Stephen J. Schulhofer & Ilene H. Nagel, *Plea Negotiations Under the Federal Sentencing Guidelines: Guideline Circumvention and Its Dynamics in the Post-Mistretta Period*, 91 Nw. U.L.Rev. 1284, 1292 [1997] [hereinafter *Guideline Circumvention* ]). "A survey of probation officers indicates that fact bargaining may be even more prevalent, reporting that only 26% of those surveyed perceived that facts were complete and accurate in 80% or more of cases." *Id.* (citing Probation Officers Advisory Group, *supra*, at 306). Indeed, in one survey, Assistant United States Attorneys actually admitted that fact bargaining occurs. Stephen J. Schulhofer & Ilene H. Nagel, *Negotiated Pleas Under the Federal Sen-*

knowingly involved in this fraud[23] and courts—now largely stripped of the powers to make fully informed sentencing decisions—tacitly acquiesce when satisfied with the negotiated plea.[24] As a result,

---

*tencing Guidelines: The First Fifteen Months,* 27 Am.Crim. L.Rev. 231, 272 (1989) [hereinafter *First Fifteen Months* ] ("In response to direct questions about fact-bargaining, most AUSAs and nearly all supervisors flatly denied its existence. A few AUSAs warned that, despite this official story, 'realistically, there is' fact-bargaining.").

"Many believe that this was the inevitable result of the Commission's attempt to limit charge bargaining." *Id.* at 28 (citing John Gleeson, *Sentence Bargaining Under the Guidelines,* 8. Fed. Sentencing Rep. 314 [1996], William T. Pizzi, *Fact–Bargaining: An American Phenomenon,* 8 Fed. Sentencing Rep. 336, 338 [1996] [hereinafter *An American Phenomenon* ], Stephen J. Schulhofer, *Assessing the Federal Sentencing Process: The Problem Is Uniformity, Not Disparity,* 29 Am. Crim. L.Rev. 833, 853 [1992], and David Yellen, *Probation Officers Look at Plea Bargaining, and Do Not Like What They See,* 8 Fed. Sentencing Rep. 339, 340 [1996] ). "As the Federal Courts Study Committee observed: 'The Guidelines have limited federal prosecutors' formal authority to offer concessions, but Congress has not provided corresponding resources to take more cases to trial. The result, it appears, is that some prosecutors (and some defense counsel) have evaded and manipulated the guidelines in order to induce the pleas necessary to keep the system afloat during this period of rapid criminal caseload increase.' " *Id.* at 28 n. 181 (quoting *Report of the Federal Courts Study Committee* 138 [1990] ). Perhaps then fact bargaining is symptomatic of larger problems inherent in the sentencing guidelines. Douglas A. Berman, *Is Fact Bargaining Undermining the Sentencing Guidelines?,* 8 Fed. Sentencing Rep. 300, 302 (1996) ("[I]f illicit fact bargaining and manipulation is in fact a serious problem, it is less likely the consequence of miscreant prosecutors who seek to thwart a just sentencing system, and more likely the consequence of law-abiding attorneys seeking to achieve just results in a sentencing system that no longer allows them to accomplish those ends directly. This reality means that reformers should focus more on changing the system and less on changing just the behavior of its participants."). Allowing under-the-table subversion of the guidelines ultimately ignores these underlying concerns.

**23.** Indeed, beyond being a fraud on the courts, fact bargaining brings with it several other negative consequences including: (1) unfettered prosecutorial discretion in that the judgment of. offense-seriousness is placed in the hands of the prosecutor with little possibility of judicial oversight; (2) disparity under the guidelines because not all prosecutors engage in such under-the-table actions; (3) burdening a defendant's right to trial by jury because the inducement to plead guilty could become "overwhelmingly powerful." *First Fifteen Months, supra,* at 274. *Contra* ACTL Report II, *supra,* at 29 (citing Kate Stith & José A. Cabranes, *Fear of Judging: Sentencing Guidelines in the Federal Courts* 133–35 [1998] ["[T]he only facts that count are those that can be proved, given the constraints of fragmentary evidence and litigation costs."], Alexander Bunin, *Whose Facts? Counterpoint to Probation Officers' View on Fact Bargaining,* 10 Crim. Prac. Man. [BNA] 477 [Nov. 6, 1996] [taking issue with the assumption that probation officers always have the "true facts"], Robert H. Edmunds, Jr., *Analyzing the Tension Between Prosecutors and Probation Officers over "Fact Bargaining",* 8 Fed. Sentencing Rep. 318, 320 [1996], Felicia Sarner, *"Fact Bargaining" Under the Sentencing Guidelines: The Role of the Probation Department,* 8 Fed. Sentencing Rep. 328, 328 [1996], *Guideline Circumvention, supra,* at 1294–1311, *First Fifteen Months, supra,* at 283, and David Yellen, *Illusion, Illogic, and Injustice: Real Offense Sentencing and the Federal Sentencing Guidelines,* 78 Minn. L.Rev. 403, 441 [1993] ).

**24.** Although some judges might not explicitly refer to fact bargaining as such, they are aware of its existence:

> [S]ometimes the government and defendant have reached a plea agreement and probation disagrees with both the defendant and government. In this situation, if I hold a [sentencing] hearing, it's an awkward proceeding . . . .

Remarks of Judge Patti B. Saris, *quoted in* Wendy L. Pfaffenbach, *Federal Judges Reveal Tips on Evidence,* Mass. Law. Wkly., Mar. 19, 2001, at B12.

> Sentencing guidelines force judges to weigh more heavily factors like quantity

sentencing under the Sentencing Guidelines today is, as one of my colleagues so aptly puts it, "a massive exercise in hypocrisy."

The issue of fact bargaining was starkly presented to the First Circuit in *United States v. Rodriguez*, 162 F.3d 135, 150–53 (1st Cir.1998), *cert. denied*, 526 U.S. 1152, 119 S.Ct. 2034, 143 L.Ed.2d 1044 (1999).

The government indicted six defendants, charging all of them with engaging in the same conspiracy to distribute crack cocaine. The district court found this conspiracy accountable for the distribution of approximately 5,000 grams of crack cocaine over a 36–week period. At sentencing, the court held Rosario and Famania accountable for all 5,000 grams of the crack cocaine. In contrast, the district court accepted the agreement of the three defendants who had pled guilty—Carvajal, De Jesus, and Villafane—which was based on responsibility only for the amount of drugs which each had personally handled. Carvajal, for example, was held accountable for 5 to 20 grams of crack cocaine. This disparity in the drug-quantity attribution led to an even more striking disparity in sentencing, which is the subject of the defendants' complaint. Carvajal was sentenced to the time he had already served, De Jesus to 17 months of imprisonment, and Villafane to 60 months of imprisonment. Famania was sentenced to 235 months of imprisonment, and Rosario to 262 months of imprisonment. Rodriguez, who was also charged with

engaging in a continuing criminal enterprise, was sentenced to life imprisonment.

The thrust of the defendants' complaint is that this vast disparity in sentencing—a difference of more than 21 years between Carvajal and Rosario, for example—is an inevitable consequence of the application of a different drug-quantity attribution algorithm for those defendants who plead guilty as opposed to those who did not. They identify the plea-bargaining practice of the Office of the United States Attorney as the source of this disparity. The defendants claim that the U.S. Attorney fashioned plea agreements with the "pleading defendants" which attributed to them an amount of drugs no greater than the amount for which the pleading defendants were personally responsible, or had personally handled. Those who did not plead guilty but exercised their right to go to trial, by contrast, had attributed to them all of the drugs that could be accounted to the entire conspiracy. Those who chose to go to trial, therefore, were necessarily sentenced on the basis of a far greater amount of drugs than those who pled guilty. . . .

. . .     .     .     .     .

. . . This practice led to the enormous sentencing disparity for the defendants who chose to put the government to its burden in proving its case. Nevertheless, the law allows the government to do this, even if it results in sentences of

---

and criminal records . . . . There is a fear on the defendant's part that lots of data will come out at trial. That . . . may lead a defendant to plead guilty rather than take a chance of getting convicted with a higher sentence.

The price tag of going to trial is much higher because the facts have determinative consequences . . . .

Judith Kelliher, *What's Behind the Decline of Federal Criminal Trials?*, Mass. B. Ass'n Law. J., May 2000, at 3 (internal quotation marks omitted) (quoting Judge Nancy Gertner). Facts are like flint—whether a defendant pleads or goes to trial, the facts should theoretically remain the same. That they do not is evidence of fact bargaining.

such disparity as would strike many as unfair.

.    .    .    .    .

... To be sure, the differential which resulted here exacts a high price from those who exercise their constitutional right to trial, but the price is not high enough to constitute a constitutional violation.

*Id.* at 150–52 (footnote omitted).

How's that? Not a word of condemnation of forbidden fact bargaining? No guidance concerning the issue beyond the suggestion that a judge may reject a plea recommendation that is too low but cannot depart downward from a disparate sentence that is too high? *Id.* at 152 & n. 2. Nothing more than the message to defendants—"That's tough."

The *Rodriguez* court dodged the issue of fact bargaining by relying on U.S.S.G. § 1B1.8(a) [25] to explain and justify the enormous disparity among those defendants that pled guilty (Villafane, Carvajal, and DeJesus) and those that went to trial (Rosario, Famania, and Rodriguez). *Rodriguez,* 162 F.3d at 151–52. The First Circuit's reliance on U.S.S.G. § 1B1.8(a), however, cannot account for the disparity between the drug quantities attributed to the defendants.

First, U.S.S.G. § 1B1.8(a) only played a role in the relevant conduct of DeJesus and Carvajal; it played absolutely no role in the government's limited attribution of drug quantity to Villafane. The plea agreement for Villafane lacked any mention of U.S.S.G. § 1B1.8.

Second, the First Circuit's characterization of the government's drug attribution as "charg[ing] each of [the pleading defendants] only with the amount of drugs they had personally handled, rather than the entire amount distributed by the conspiracy," *Rodriguez,* 162 F.3d at 152, mischaracterizes the amounts the government actually attributed to the pleading defendants. There was evidence with respect to each defendant who pled guilty that specifically placed more than the attributed drug quantity in his hands. None of this information was mentioned in the presentence reports, however, because the Probation Office relied solely on the government's version of the trial testimony, Probation Office Resp. Dist. Ct. Order ¶¶ 1–2, which failed to include these additional drug transactions, *id.* Ex. B. Villafane was attributed 23.7 grams of cocaine base based on a single transaction with a government witness. Villafane's Presentence Report ¶ 27. The testimony of Ellerbee, Carvajal, and Torres at trial, however, revealed that a significantly larger quantity passed through Villafane's hands. Trial Tr. Day 3, at 83, 85–87, 125–26; *id.* Day 4, at 91 (Carvajal testifying to obtaining five ounces of cocaine from Villafane); *id.* Day 5, at 30 (Torres testifying to Villafane selling drugs for Rodriguez). Carvajal was attributed less than 20 grams of cocaine, excluding the information he supplied pursuant to his plea agreement. Carvajal's Presentence Report ¶ 18. The grand jury testimony, which is not affected by the plea agreement, revealed that more than twenty grams passed through Carvajal's hands

**25.** The guideline provides:

Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement. U.S.S.G. § 1B1.8(a).

on several occasions. Grand Jury Tr. of Jonathan Barry Luskin (Oct. 25, 1995) at 11, 15, 21–23 (describing drug transactions involving "Johnny," or Carvajal). DeJesus was only attributed 26.4 grams of cocaine based on two transactions with government witnesses. DeJesus's Presentence Report ¶¶ 25, 26, 34. DeJesus also made at least two other transactions with other government witnesses that were not, however, attributed to him. Trial Tr. Day 3, at 46–47 (attributing several transactions to DeJesus); DeJesus's Change of Plea Hr'g Tr. (Feb. 22, 1996) at 18–19 (describing availability of testimony regarding at least two additional drug transactions with DeJesus). The presence of these facts on the record, independent of the pleading defendants' own statements, severely undermines the government's reliance on U.S.S.G. § 1B1.8 to justify the low drug quantities attributed to these defendants. Moreover, the First Circuit was aware of these facts, *see* Reply Br. of Def.-Appellant Famania at 12–15 (bringing these facts to the attention of the court) but ignored them and their implications on the existence of fact bargaining.

Third, and most telling, the First Circuit's characterization of the government as "charg[ing]" the pleading defendants with only the drugs they personally handled hides the presence of fact bargaining by blurring the distinction between fact bargaining and charge bargaining. Drug quantity is not subject to charge bargaining. Subject to the restrictions of *Appren-*

*di,* the Sentencing Guidelines make clear that drug quantity is a factual question to be determined by the judge. U.S.S.G. §§ 1B1.3, 2D1.1, 6A1.3 cmt. The government's choice to limit the drugs attributed to each defendant who pled guilty usurped the judicial role in determining drug quantity. This *is* fact bargaining.

The First Circuit's silence as to the presence of fact bargaining and ultimate reliance on factual anomalies unfortunately and substantially undercuts *Rodriguez'* reasoning and holding. Nevertheless, although severely criticized,[26] *Rodriguez* is the law in the First Circuit and I respect and follow it. So do others. Although the evidence is anecdotal, it would appear that fact bargaining has increased exponentially in this District since the *Rodriguez* decision.

I do, however, confess that, for me, *Rodriguez* represents a sad epiphany. If fact bargaining is acceptable, then the entire moral and intellectual basis for the Sentencing Guidelines is rendered essentially meaningless. If "facts" don't really matter, neither does "judging" contribute anything to a just sentence. Kate Stith & José A Cabranes, *Fear of Judging: Sentencing Guidelines in the Federal Courts* 82 (1998) ("By replacing the case-by-case exercise of human judgment with a mechanical calculus, we do not judge better or more objectively, nor do we judge worse. Instead, we cease to judge at all."); Judith Resnik, *Trial as Error, Jurisdiction as Injury: Transforming the Meaning of Article III,* 113 Harv. L.Rev.

---

26. ACTL Report II at 29 (noting *Rodriguez* as an example of the "extreme disparity" that gives rise to a "Hobson's choice between an unpredictably high sentence based on easily- proved relevant conduct if [one] go[es] to trial, and a much lower, determinate sentence accomplished through fact bargaining.").

924, 1003 (2000) ("Federal judges act as if they believe that stories dissolve in endless variations .... Judges have, through their practices and doctrine, ... so deconstructed judging that it is at risk of being undermined as a politically or legally viable concept.").

A judge, however, may not acquiesce in fraud.[27] The response in this session of the court has been three-fold: an exploration of the consequences of fact bargaining;[28] implementation of measures to check fact bargaining;[29] and serious reflection upon sentencing disparities among similarly situated defendants. As the present case is *not* one where fact bargaining appears to have played any role, only the last concern plays a role in this case.[30]

### B. *Burdening the Right to a Jury Trial* [31]

"The law is clear beyond peradventure that a sentence based on retaliation for exercising the constitutional right to stand trial is invalid." *United States v. Mazzaferro*, 865 F.2d 450, 460 (1st Cir.1989) (Bownes, J.). Well, not really. At least not today in the First Circuit. Evidence of sentencing disparity visited on those who exercise their Sixth Amendment right to trial by jury is today stark, brutal, and incontrovertible. True, there has always been a sentencing discount for those who plead guilty and turn state's evidence. In this District, that discount used to range from 33% to 45%.[32] Today, under the Sentencing Guidelines regime with its vast

---

27. Model Code of Judicial Conduct Canons 1–3 (2000). Moreover, as a Massachusetts attorney, I have sworn a solemn oath to "do no falsehood, nor consent to the doing of any in court." Mass. Gen. Laws ch. 221, § 38.

28. *See infra* Appendix C.

29. *See infra* Appendix D.

30. Because fact bargaining plays **no** apparent role in the case as to which this Report is sought, one fairly may ask, "Why all the hullabaloo about it here, Judge?" The answer is simple. "Substantial assistance" and fact bargaining together constitute the single greatest cause of the disparity in sentencing that so burdens the free exercise of the Sixth Amendment.

31. The marginalization of the American criminal jury due to the sometimes bizarre and routinely byzantine operation of the Sentencing Guidelines has, in other contexts, already been noted by scholars. *E.g.*, Nancy Gertner, *Circumventing Juries, Undermining Justice: Lessons from Criminal Trials and Sentencing*, 32 Suffolk U.L.Rev. 419 (1999); William T. Pizzi, *Trials Without Truth* 225 (1998); William T. Pizzi, Watts: *The Decline of the Jury*, 9 Fed. Sentencing Rep. 303 (1997).

32. Remarks of Francesca Bowman, Chief Probation Officer, District of Massachusetts (Dec. 2, 1999).

shift of power to the Executive, that disparity has widened to an incredible 500%.[33] As a practical matter this means, as between two similarly situated defendants, that if the one who pleads and cooperates gets a four-year sentence, then the guideline sentence for the one who exercises his right to trial by jury and is convicted will be twenty years.

Not surprisingly, such a disparity imposes an extraordinary burden on the free exercise of the right to an adjudication of guilt by one's peers. Criminal trial rates in the United States and in this District

33.

| | 1990 | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 | 1997 | 1998 | 1999 |
|---|---|---|---|---|---|---|---|---|---|---|
| Average Jail Sentence for all Pleas | 36 | 44 | 52 | 42 | 48 | 55 | 48 | 48 | 51 | 48 |
| Average Jail Sentence for Pleas (No Cooperation) | 36 | 48 | 59 | 43 | 52 | 58 | 53 | 51 | 58 | 52 |
| Average Jail Sentence for Pleas (Cooperation) | 41 | 32 | 34 | 40 | 35 | 30 | 29 | 37 | 30 | 35 |
| Average Jail Sentence for all Trials | 81 | 90 | 135 | 108 | 169 | 149 | 113 | 184 | 149 | 172 |
| Percentage Decrease from All Trials to All Pleas | 58% | 51% | 61% | 60% | 71% | 63% | 57% | 74% | 66% | 72% |
| Percentage Decrease from all Trials to Pleas (No Cooperation) | 58% | 47% | 56% | 60% | 69% | 60% | 53% | 78% | 61% | 70% |
| Percentage Decrease from all Trials to Pleas (Cooperation) | 55% | 64% | 76% | 62% | 79% | 80% | 74% | 80% | 80% | 79% |

Report from U.S. Probation Department, District of Massachusetts (Dec. 2, 1999).

are plummeting [34] due to the simple fact that today we punish people—punish them severely—simply for going to trial.[35] It is the sheerest sophistry to pretend otherwise. This is nothing new, of course. Sugarcoat it as we may with terms like

**34.** Charts 1 and 2:

Charts 1 and 2:

Trial Rate in the District of Massachusetts
Percent of Defendant Dispositions by Trial

Source: Statistical Table D-7

Criminal Defendant Trial Rates
1987-1999

Chart 1: Office of Management Coordination and Planning (2001) (modified from original).

Chart 2: Office of Management Coordination and Planning, Decreasing Trial Rates in the United States District Courts 2 fig.2 (2000) (modified from original).

*See also* Statistics Div. of the Admin. Office of the U.S. Courts, *Judicial Business of the United States Courts: 2000 Annual Report of the Director Leonidas Ralph Mecham* 25 (2000) (reporting a fourteen percent decrease in criminal jury trials from 1996 to 2000 and a five percent decrease in criminal jury trials in 2000).

These figures are even more compelling when it is remembered that criminal case filings nationwide and in this District rose for each of the years in question.

**35.** Because of the Sentencing Guidelines, pleas have increased and the number of criminal trials has been declining despite the fact that criminal filings have significantly increased:

In 1999, the U.S. District Courts completed the fewest number of trials in 30 years, while filings were two and one-half times higher than in 1970. Civil trials have been decreasing since 1982, and criminal trials have been decreasing since 1992. Declines in trials have occurred in all categories of cases and in both jury and nonjury trials. Most importantly, the proportion of cases terminated by trial has been declining.

The participants agreed this is a significant strategic issue for the judiciary. They identified and discussed possible contributing factors to the decline of trials. *Sentencing Guidelines were seen as the major factor bringing about more guilty pleas and, as a consequence, fewer trials.*

"acceptance of responsibility" for those who cooperate, we have always punished those who demand that the government carry its constitutionally-mandated burden of persuasion beyond a reasonable doubt before an American jury. What is new and unprecedented is the severity of the punishment we are meting out to those whose only differentiating factor is that they ask for the chance to have an independent jury evaluate the evidence.

■ Although this case does not require that the line be drawn with precision, were it open to me I would today hold that the 700% difference between Cimeno's three-year sentence and Berthoff's twenty-one year sentence is simply too great a burden on Berthoff's exercise of his Sixth Amendment right to trial by jury and a sentence of fifteen years (i.e., a 500% increase over Cimeno to a sentence in line with the one Judge Freedman gave Catalucci) would be more just.

Of course, it is not open to me. This Court presently has no jurisdiction to revise or revoke Berthoff's sentence, Fed. R.Crim.P. 35, and it would border on impertinence for me to grant Berthoff's habeas petition in light of the express holding in *Rodriguez* and its refusal to permit a downward departure on facts even more compelling than those present here. Yet surely Berthoff, on these facts, has made "a substantial showing of a denial of [his] constitutional right" to trial by jury such that issuance of a certificate of appealability is appropriate. 28 U.S.C. § 2253(c)(2).

1. I know this much is true: -

Long Range Planning Comm. of the U.S. Judicial Conference, *Summary Report, September 2000 Long–Range Planning Meeting* 2 (2000) (emphasis added); *see also An American Phenomenon, supra,* at 336 ("[T]he federal system has traditionally been an island of resistance to sentence bargaining, but the

"[T]he jury system . . . [is] as direct and as extreme a consequence of the sovereignty of the people as universal suffrage." [1 Alexis de Tocqueville, *Democracy in America* 294 (Henry Reeve trans., Vintage Books 1945).] Like all government institutions, our courts draw their authority from the will of the people to be governed. The law that emerges from these courts provides the threads from which all our freedoms are woven. It is through the rule of law that liberty flourishes. Yet, "there can be no universal respect for law unless all Americans feel that it is *their* law." Kaufman, *A Fair Jury—The Essence of Justice,* 51 Judicature 88, 91 (1967) (emphasis in original). Through the jury, the citizenry takes part in the execution of the nation's laws, and in that way each can rightly claim that the law belongs partly to her.

Only because juries may decide most cases is it tolerable that judges decide some. However highly we view the integrity and quality of our judges, it is the judges' colleague in the administration of justice—the jury—which is the true source of the courts' glory and influence. The involvement of ordinary citizens in a majority of a court's tasks provides legitimacy to all that is decreed. When judges decide cases alone they "are still surrounded by the recollection of the jury." Tocqueville, *supra* at 297. Their voices, although not directly those of the community itself, echo the values and the judgments learned from observing juries at work. In reality, ours is not a system where the judges cede some of their sovereign-

[Probation Officers Advisory Group] survey suggests that this is eroding under the sentencing guidelines. . . . The American criminal justice system has ceased to be a trial system in the way other western systems remain trial systems; it is a system of negotiation and compromise.").

ty to juries, but rather where the judges borrow their fact-finding authority from the jury of the people.

*In re Acushnet River & New Bedford Harbor: Proceedings re Alleged PCB Pollution,* 712 F.Supp. 994, 1005–06 (D.Mass. 1989).

"Without juries, the pursuit of justice becomes increasingly archaic, with elite professionals talking to others, equally elite, in jargon the elegance of which is in direct proportion to its unreality. Juries are the great leveling and democratizing element in the law. They give it its authority and generalized acceptance in ways that imposing buildings and sonorous openings cannot hope to match. Every step away from juries is a step which ultimately weakens the judiciary as the third branch of government. *See* Edward F. Hennessey, Henry Clay & T. Marvell, *Complex and Protracted Cases in State Courts* (National Center for State Courts 1981). Indeed it may be argued that the moral force of judicial decisions—and the inherent strength of the third branch of government itself—depends in no small measure on the shared perception that democratically selected juries have the final say over actual fact finding."

It is not too much to say that the greatest threat to America's vaunted judicial independence comes—not from any external force—but internally, from the judiciary's willingness to allow our jury system to melt away. *See* [Judith Resnik, *Trial as Error, Jurisdiction as Injury: Transforming the Meaning of Article III,* 113 Harv. L.Rev. 924, 1003 (2000).]

*Ciulla v. Rigny,* 89 F.Supp.2d 97, 102 n. 7 (D.Mass.2000) (quoting *In re Acushnet River,* 712 F.Supp. at 1006 & n. 23).

2. Although the Supreme Court is willing to accept enormous burdens upon an individual's Sixth Amendment right to demand trial by jury, *Corbitt v. New Jersey,* 439 U.S. 212, 218–20, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978), its tolerance is not without limit, *United States v. Jackson,* 390 U.S. 570, 582–83, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968).

3. Fact bargaining is illegal, U.S.S.G. § 6B1.4(a)(2), and its tolerance by the First Circuit in *Rodriguez* rests upon reasoning not fully supported by the factual record there presented.

4. The virtually untrammeled power over sentencing that Congress has ceded to the President's agents is today resulting—through a combination of grants for substantial assistance, lawful charge bargaining, and illegal fact bargaining—in a steady erosion of America's criminal jury system with profound and as yet unknown results.

Therefore, in an appropriate case, where the government has engaged in illegal fact bargaining with one defendant, I would not hesitate to hold that a defendant similarly situated in all material respects could take advantage of the fact bargain in order freely to exercise the right to trial by jury guaranteed by the Sixth Amendment.

This is not such a case. After the most thorough reflection, while I fully admit that were I free to do so I would reduce Berthoff's sentence, I can see no principled way to reach such a result and at the same time remain faithful to the judicial decisions that properly control analysis here. The best I can do is grant this certificate of appealability.

• I respectfully urge the Court of Appeals to address these intractable issues with the aid of the broadest array of amici curiae,[36]

---

**36.** Compare the recent practice of the Massa-

chusetts Supreme Judicial Court, which "in-

as it is important to reflect that our criminal justice system is, at bottom, a community effort. Concerns over efficiency, transaction costs, and disposition rates do not entirely reflect the values promoted by the American jury. Today, the values implicit in the Sixth Amendment are squandered by the sentencing regime under which we operate.

We are told there is a war on crime.[37] As is true in any "war," however, "truth is the first casualty." [38] With fact bargaining an accepted way of life in our federal criminal courts, and unconscionable disparities in sentencing imposed on those who ask for an independent jury, the American jury system withers. While the future cannot be foreseen, I respectfully suggest that history will not judge kindly an acquiescence in the eclipse of our greatest bulwark of personal liberty.[39] Surely the Sixth Amendment to the Constitution of the United States requires something more.

---

vit[es] briefs from various groups on cases with wide ramifications." *Friends of the Court*, Mass. Law. Wkly., Feb. 12, 2001, B2 (quoting Margaret H. Marshall, Chief Justice of the Supreme Judicial Court).

**37.** *E.g.*, Proclamation No. 7084, 3 C.F.R. 26, 27 (1999) (National Crime Victims' Rights Week, 1998).

**38.** Arthur Ponsonby, *Falsehood in War Time* (1928).

**39.** *See* Joseph Story, 3 *Commentaries on the Constitution of the United States* § 1773, at 652–53 (Fred B. Rothman & Co.2d ed.1999) (1833).

APPENDIX A

Substantial Assistance Departure Rate Across Judicial Districts for
October 1, 1995 to September 30, 1996

ACTL Report I, *supra*, at 23.

APPENDIX B

| Docket # | Case Title | Filing Date | Defendant's Name | Original Charge | Charge Bargain | Charges Terminated | Sentence | Judge |
|---|---|---|---|---|---|---|---|---|
| 96-10047 | USA v. Patrick | 11/10/98 | Michael Handy | Count 1: Conspiracy to distribute cocaine (21:846) | Count 1s: Distribution of cocaine; aiding and abetting (21:841) (a)(1) | Count 3: Conspiracy to Distribute Cocaine Base (21:846) Count4: unknown | 57 months imprisonment | Judge Keeton |
| 96-10163 | USA v. Ahern | 4/16/98 | Stewart Thomas | Count 1: Conspiracy to import heroin (21.963) | Willful Tax Evasion (26:7201) | Count 1: Conspiracy to import heroin (21:963) Count 2: Conspiracy to possess heroin with intent to distribute (21:846) Count 13: Possession of heroin with intent to distribute (21:841(a)(1), 18:2 Count 14: Importation of heroin (21:960(a)), 18:2 | 3 years probation | Judge Woodlock |
| 96-10163 | USA v. Ahern | 4/16/98 | Warren Bennett | Count 1: Conspiracy to import heroin (21:963) | Willful Tax Evasion (26:7201) | Count 1: Conspiracy to import heroin (21:963) Count 2: Conspiracy to possess heroin with intent to distribute (21:846) Count 13: Possession of heroin with intent to distribute (21:841(a)(1), 18:2 Count 14: Importation of heroin (21:960(a)), 18:2 | 3 years probation | Judge Woodlock |
| 96-10195 | USA v. Brown | 3/20/98 | Adam Brown | Count 1: Felon in possession of firearm and ammunition (18:922(g)(1)) | Possession of Stolen Firearm (18:922 (j) | None | 100 months imprisonment | Judge Harrington |
| 97-10043 | USA v. Gold | 1/8/98 | Harold M. Gold | Counts 1-2: Attempt to Evade or Defeat Tax (26:7201) Counts 3-5: Unknown | Charges 1s-2s: Attempt to Evade or Defeat Tax (26:7201.F) Charges 3s-5s: Frauds and Swindles (18:1341.F) | None | 21 months imprisonment | Judge Tauro |
| 97-10066 | USA v. Roberts | 1/21/98 | Charles Raymond Roberts | Counts 1-2: Wire Fraud (18:1343) Count 3: Misappropriation of Postal Funds (18:1711) | Charges 1s-5s: Misappropriation of Postal Funds > $100 (18:1711) | None | 12 months imprisonment | Judge Tauro |

| Docket # | Case Title | Filing Date | Defendant's Name | Original Charge | Charge Bargain | Charges Terminated | Sentence | Judge |
|---|---|---|---|---|---|---|---|---|
| 97-10063 | USA v. Trainor | 5/19/98 | Edward J. Trainor, III | Count 1: Collection of Credit by extortion (18:894)<br>Count 2: Malicious damage to building by means of explosives (18.844(i))<br>Count 3: Use of explosives to commit a felony (18:844(h))<br>Count 4: Felon in possession of ammunition (18:922(g)(1))<br>Count 5: Possession of ammunition by a person subject to a restraining order (18:922)(g)(8)) | Count 1s: Use of communication facility to distribute cocaine (21.843(b)) | Counts 1-5 | 36 months imprisonment | Judge Lindsay |
| 97-10110 | USA v. Siegel | 11/4/98 | Marilyn L. Kriensky | Count 1: Conspiracy (18:371)<br>Count 2: Mail fraud (18 1341,2)<br>Count 3: Wire fraud (18:1343,2)<br>Count 4-10: False statements (18:1014,2)<br>Count 11: False statements (18:1014,2)<br>Count 12-13: False statements (18:1014,2) | Count 1s: Theft of money from bank (18:2113(b)) | Counts 1,2,3,4-10,11,12-13 | 1 year probation | Judge Tauro |
| 97-10220 | USA v. Marin | 9/2/98 | Sonia Marin | Count 2: Conspiracy to possess heroin with intent to distribute and to distribute heroin (21:846)<br>Counts 16-17: Possession of heroin with intent to distribute and distribution of heroin; aiding and abetting (21:841(a)(1) | | Counts 1ss: Use of a telephone to facilitate drug offense (21:843(b))<br>Counts 2 and 2s: Conspiracy to possess heroin with intent to distribute and to distribute heroin (21:846)<br>Counts 16-17: Possession of heroin with intent to distribute and distribution of heroin; aiding and abetting (21:841(a)(1) | No sentence | Judge Dein |
| 97-10234 | USA v. Duarte | 11/13/98 | Leonard Vargus | Count 3: Conspiracy to Possess Marijuana with intent to Distribute (21:846) | Count 1s: Conspiracy to Possess Marijuana with Intent to distribute (21:846)<br>Count 2s: Conspiracy to Launder Money (18:1956(h)) | None | Count 1s: 151 months imprisonment<br>Count 2s: 151 months imprisonment<br>Concurrent. | Judge Gertner |

49

| Docket # | Case Title | Filing Date | Defendant's Name | Original Charge | Charge Bargain | Charges Terminated | Sentence | Judge |
|---|---|---|---|---|---|---|---|---|
| 97-10234 | USA v. Duarte | 11/13/98 | Thomas Vargus | Count 3: Conspiracy to Possess Marijuana with Intent to Distribute (21:846) | Count 1s: Conspiracy to Possess Marijuana with Intent to distribute (21:846) Count 2s: Conspiracy to Launder Money (18:1956(h)) | None | Count 1s: 141 months imprisonment Count 2s: 151 months imprisonment Served concurrently | Judge Gertner |
| 97-10254 | USA v. Buenaventura | 4/6/98 | Adiela A. Arcilia | Count 1: Conspiracy to Possess Cocaine with intent to distribute (21:846) | Count 1ss: Use of Communication facility to facilitate possession with intent to distribute, and distribution of, cocaine (21:843b)) | Counts 1 and 1ss dismissed | No sentence | Judge Wolf |
| 97-10290 | USA v. Garcia | 11/17/98 | Robert Luis Aguilar | Count 1: Conspiracy to distribute, and to possess with intent to distribute, heroin, marijuana and amphetamine (21:846) Count 7: Possession with intent to distribute, and distribution of, amphetamine; aiding and abetting (21:841(a)(1) | Count 1s: Unlawful possession of cocaine (21:844) | Counts 1 and 7 dismissed | 24 months probation | Judge Stearns |
| 98-10064 | USA v. Duffey | 5/7/98 | James Duffey | Count 1: Conspiracy to distribute PCP (21:846) Count 2: Attempt to possess with intent to distribute PCP (21:846) | Count 1s: Use of a telephone to facilitate drug offense (21:843) | Counts 1 and 2 dismissed | 48 months imprisonment | Judge Young |
| 98-10093 | USA v. Washington | 6/18/98 | Manual Washington | Count 1: Attempted bank robbery (18:2113A(a)) | Count 1s: Conspiracy to defraud the US (18:371) Count 2s: Threat to murder federal law enforcement officer (18:115(a)(1) | None | Count 1s: 96 months imprisonment Count 2s: 96 months imprisonment | Judge Saris |
| 98-10126 | USA v. Bufalino | 9/15/98 | William A. Culbreth | Count 1: Armed bank robbery; aiding and abetting (18:2113(a) and (d), 2 Count 2: Carrying and use of a firearm; aiding and abetting (18:924(c)), 2 | Count 1s: Conspiracy to Commit armed bank robbery (18:371) | Counts 1 and 2 dismissed | 30 months imprisonment | Judge Lindsay |
| 98-10152 | USA v. Trifero | 10/8/98 | Sean Trifero | Count 1-3: Computer abuse; aiding and abetting (18:1030(a)(5)(A),2) Count 4: Computer abuse; aiding and abetting (18:1030(a)(2)(c)) | | Count 1ss-3ss: Computer abuse (18:1030(a)(5)(A),2) Count 4ss: Computer abuse (18:1030(a)(2)(c),2) | Counts 1ss-3ss: 1 year + 1 day imprisonment Count 4ss: 1 year +1 day imprisonment | Judge Saris |
| 98-10175 | USA v. Amor | 11/6/98 | Joseph Amor | Count 1: False or fraudulent application (8:1160(b)(7)(t) Count 2: Materially false statements to INS (18:1546(a)) Count 3: Unlawful procurement of citizenship (18:1425(b)) | Count 1ss: Use of false social security number (42:408)(a(7)(B)) | Counts 1-3 dismissed | Count 1ss: 171 days imprisonment (time served) | Judge Stearns |
| 98-10250 | USA v. Andrews | 9/21/98 | Arthur L. Andrews | Count 1: Theft of government property (18:641) | Count 1s: Theft of government property | | 1 year probation | Judge O'Toole |

| Docket # | Case Title | Filing Date | Defendant's Name | Original Charge | Charge Bargain | Charges Terminated | Sentence | Judge |
|---|---|---|---|---|---|---|---|---|
| 98-10259 | USA v. Remington | 11/19/98 | Sean Meola | Count 1: Bank robbery; aiding and abetting (18:2113(d),2) / Count 2: Use of a firearm during crime of violence; aiding and abetting (18:924(c)(1),2) | Count 1s: Bank robbery (18:2113(a)) / Count 2s: Use of a firearm during crime of violence (18:924(c)(1)) | Count 1 dismissed | Counts 1s and 2s: 10 years imprisonment; 5 years on each count to run consecutively | Judge Young |
| 98-10259 | USA v. Remington | 12/29/98 | James Remmington | Count 1: Bank robbery; aiding and abetting (18:2113(d),2) / Count 2: Use of a firearm during crime of violence; aiding and abetting (18:924(c)(1),2) | Count 1s: Bank robbery (18:2113(a)) / Count 2s: Use of a firearm during crime of violence (18:924(c)(1)) | None | Counts 1s: 20 years imprisonment / Count 2s: 5 years imprisonment | Judge Young |
| 94-10187 | USA v. Constancio | 1/26/99 | Juan Paredes | Count 1: Conspiracy to possess cocaine base with intent to distribute (21:846) / Count 6: Possession of cocaine base with intent to distribute (21:841(a)(1)) | Count 1ss: Use of a communication facility, aiding and abetting (21:843(B),2) / Count 6s: Possession of cocaine base with intent to distribute (21:841(a)(1), 18:2) | Counts 1s and 6s are dismissed | Counts 1ss: 48 months imprisonment | Judge Keeton |
| 97-10009 | USA v. Martorano | 9/9/99 | John v. Martorano | Count 1: RICO (18:1962(d)) / Count 2: RICO (18:1962(c)) / Count 3: Bribery in sporting contest (18:224) / Count 4: Money laundering (18:1951) / Count 5: Extensions of Credit by financial extortion (18:893,2) / Count 6: Extensions of credit by extortion (18:892(a)) / Count 7: Collection of credit by extortion (18:894(a)) / Count 8: Illegal gambling (18:1955,2) / Counts 9-77 Money laundering (18:1956)(a)(1)(b)(i)), 1956(a)(1)(B)(ii)),2 / Count 78: Aiding and abetting a fugitive (18:3) / Count 79: Concealing person from arrest (18:1071) | Count 1s: Conspiracy - RICO (18:1962(d)) / Count 2s: RICO; aiding and abetting (18:1962(c)) / Count 3s: Bribery in sporting contest (18:224) / Count 4s: Extortion in violation of Hobbs Act (18:1951) / Count 5s: Extensions of Credit by financial extortion, aiding and abetting (18:893,2) / Count 6s: Making extortionate extensions of credit (18:892(a)) / Count 7s: Collection of extension of credit by extortion (18:894(a)) / Count 8s: Illegal gambling; aiding and abetting (18:1955,2) / Counts 9s-77s Money laundering, aiding and abetting (18:1956)(a)(1)(b)(i)), 1956(a)(1)(B)(ii)),2 / Count 78s: Accessory after the fact (18:3) / Count 79s: Harboring a fugitive (18:1071) | None | Disposition: none | Judge Wolf |
| 97-10081 | USA v. Disela | 9/27/99 | Orlando Lopez | Count 1: Conspiracy to distribute heroin (21:846) / Count 19: Possession with intent to distribute heroin (21:841(a)(2)) | Count 1ss: Possession of altered telecommunications instruments (18:1029(a)(7)) | Count 1s dismissed | Count 1: time served / Count 19: time served | Judge Stearns |

51

| Docket # | Case Title | Filing Date | Defendant's Name | Original Charge | Charge Bargain | Charges Terminated | Sentence | Judge |
|---|---|---|---|---|---|---|---|---|
| 97-10162 | USA v. Carrasquillo | 3/18/99 | Oscar Carrasquillo | Count 1: Conspiracy to import a controlled substance (21:963) Count 2: Importation of controlled substance (21:952(a), 21:960) | Defendant pleaded guilty to one count superceding informtion | None | n/a | Judge Harrington |
| 97-10234 | USA v. Duarte | 6/9/99 | James Fottler | Count 10: Conspiracy to launder money (18:1956(h)) | Count 1s: Structuring transactions to evade reporting requirements (31:5324) | Count 10 dismissed | Count 1s: 2 years probation | Judge Gertner |
| 97-10318 | USA v. Bashorun | 10/26/99 | Anthony Judaid | Count 1: Conspiracy to possess heroin with Intent to distribute (21:846) Count 2: Possession of heroin with intent to distribute; aiding and abetting (21:841(a)(1)) | Count 1sss: Mail frauds (18:1341) Count 2ss: Use of communication facility in furtherance of a controlled substance offense (21:843(b)) Count 8ss: Possession of heroin with intent to distribute, aiding and abetting (21:841, (a)(1),2) | Counts 9ss-10ss dismissed | Count 1sss: 12 months probation | Judge Gertner |
| 97-10336 | USA v. Hines | 10/8/99 | Johanna Hines | Count 1: Bank robbery (18:2113 (a)) | Count 1s: Conspiracy to commit bank robbery (18:371) | Count 1 dismissed | Count 1s: 48 months imprisonment | Judge Gertner |
| 98-10046 | USA v. Peral | 9/21/99 | Nelson Peral | Count 1: Conspiracy to possess with intent to distribute (21:846) Count 2-3: Possession with intent to distribute and distribution of heroin (21:841(b)(1)(C)) | Count 1ss: Conspiracy to distribute and possess with intent to distribute heroin (21:846) Count 2ss: Possession with intent to distribute and distribution of heroin; aiding and abetting (21:841(a)(1),2) Count 3ss: Possession with intent to distribute and distribution of heroin; aiding and abetting (21:841(a)(1),2) | None | 52 months Imprisonment | Judge Tauro |
| 98-10054 | USA v. Lora | 10/20/99 | Victor Rojas | Count 1: Conspiracy to possess cocaine with intent to distribute (21:846) Count 2: Possession of cocaine with intent to distribute; aiding and abetting (21:841) | Count 1ss: Interstate travel in aid of racketeering (aiding and abetting) (18:1952(a)(3)) | Counts 1, 1s, 2, 2s dismissed | 60 months Imprisonment | Judge Gertner |
| 98-10054 | USA v. Lora | 10/20/99 | Luis Lora | Count 1: Conspiracy to possess cocaine with Intent to distribute (21:846) Count 2: Possession of cocaine with intent to distribute; aiding and abetting (21:841) | Count 1ss: Interstate travel in aid of racketeering (aiding and abetting) (18:1952(a)(3)) | Counts 1, 1s, 2, 2s dismissed | 60 months Imprisonment | Judge Gertner |
| 98-10069 | USA v. Clark | 10/27/99 | Vernon Clark | Count 1: Conspiracy (18:371) Counts 2-3: Aiding and assisting in the preparation and presentation of a false and fraudulent income tax return (26:7206 (2)) | Count 1s: Fraudulent returns, statements/other documents (26:7207.M) | Counts 1,2,3 dismissed | $5,000 fine | Judge Tauro |
| 98-10074 | USA v. Nunes | 1/22/99 | Richard Nunes | Count 1: Felon in possession of a firearm and ammunition | Count 1s: Conspiracy (18:371) | Count 1 dismissed | 60 months imprisonment | Judge Saris |
| 98-10111 | USA v. Mauro | 4/14/99 | Domenico Mauro | Count 1: Possession of Child Pornography (18:2252(a)(5)(B)) | Count 1s: Possession of child pornography (18:2252A(a)(5)(B)) | Count 1 dismissed | 60 months probation | Judge Harrington |

| Docket # | Case Title | Filing Date | Defendant's Name | Original Charge | Charge Bargain | Charges Terminated | Sentence | Judge |
|---|---|---|---|---|---|---|---|---|
| 98-10114 | USA v. Eppard | 10/27/99 | Ann M. Eppard | Count 1: Conspiracy (18:371) Count 2-6: Mail fraud; aiding and abetting (18:1341, 1346, 2) Count 7: Wire fraud; aiding and abetting (18:1343, 1346, 2) | Count 1s: Compensate members of Congress/government official (18:203(B),F) | Counts 1-7 dismissed | $5,000 fine | Judge Tauro |
| 98-10126 | USA v. Bufalino | 2/18/99 | Darin Bufalino | Count 1: Armed bank robbery; aiding and abetting (18.2113(a) and (d),2) Count 2: Carrying and use of a firearm; aiding and abetting (18:924(c), 2) | Count 1s: Conspiracy (18:371) Count 2s: Firearm in relation to crime of violence (18:924(c)) | Counts 1 and 2 dismissed | 120 month imprisonment; 60 months for each count | Judge Lindsay |
| 98-10169 | USA v. Jones | 4/16/99 | Richard Corey | Count 1: Conspiracy to possess cocain base with intent to distribute (21:846) Count 20: Extortion by color of official right (18:1951) | Count 1s: Wire fraud; aiding and abetting (18:1343, 1346,2) | Counts 1 and 20 dismissed Count 23ss: Interference with commerce by threat or violence | 42 months imprisonment | Judge Young |
| 98-10183 | USA v. Woodrum | 2/1/99 | Ronald Woodrum | Count 1: Felon in possession of a firearm and ammunition (18:922 (g)(1)) Count 2: Possession with intent to distribute cocaine base (21:841(a)(1)) | Count 1s: Drug user or addict in possession of firearm or ammunition (18:922 (g)(3)) Count 2s: Possession of cocaine base (21:844) | None | Count 1s: 27 months imprisonment Count 2s: 24 months imprisonment | Judge Stearns |
| 98-10248 | USA v. Monterio | 1/19/99 | Joseph Monterio | Counts 1 and 2: Corruption concerning programs receiving federal funds (18:666(a)(1)(B)) Count 3: Extortion by fear of economic harm and under color of official right (18:1951)(a)) Counts 4-15: Mail fraud, aiding and abetting (18:1341, 1346, 2) Count 16: Tampering with a witness (18:1512(B)(3)) | Count 1s: Corruption concerning programs receiving federal funds (18:666(a)(1)(B)) Count 2s: Tampering with a witness (18:1512(b)(3)) | Counts 1-16 dismissed | 5 months imprisonment | Judge Keeton |
| 98-10263 | USA v. Soto | 2/5/99 | Ramon Soto | Count 1: Felon in possession of a firearm (18:922(g)(1)) | Count 1s: Conspiracy to possess a firearm as a felon (18:371) | None | 60 months imprisonment | Judge O'Toole |
| 98-10296 | USA v. Hongla-Yamche | 7/16/99 | Ivo Hongla-Yamche | Count 1: Endangered species act (16:1538(c)(1), 1540(b)(1) | Count 1s: Endangered species act (16:1538(c)(1)) | None | 12 months probation | Judge Harrington |
| 98-10305 | USA v. Robinson | 1/13/99 | Robert Robinson | Count 1: Felon in possession of a firearm (18:922(g)(1)) | Count 1s: Conspiracy to possess a firearm as a felon (18:371) | None | 36 months imprisonment | Judge Tauro |

| Docket # | Case Title | Filing Date | Defendant's Name | Original Charge | Charge Bargain | Charges Terminated | Sentence | Judge |
|---|---|---|---|---|---|---|---|---|
| 98-10312 | USA v. Shennette | 10/19/99 | Troy K. Shennette | Count 1: Conspiracy (18:371) Count 2: Engaging in the business of dealing in firearms without a license; aiding and abetting (18:922(a)(1)(A)) Count 3: Transporting firearms into state of residence; aiding and abetting (18:922(a)(3), 2) Count 4: Transportation of firearms with obliterated serial numbers; aiding and abetting (18:922(k),2) | Count 1s: conspiracy to transport firearms in interstate commerce dismissed | None | 1 year and one day imprisonment | Judge O'Toole |
| 98-10348 | USA v. Nieves | 3/5/99 | Daniel Nieves | Count 1: Felon in possession of a firearm (18:922(g)(1)) | Count 1s: Possession of stolen firearms and ammunition (18:922(j)) | Count 1 dismissed | 70 months imprisonment | Judge Lindsay |
| 98-10363 | USA v. Velez | 8/4/99 | Raola A. Velez | Count 1: Conspiracy to possess cocaine with intent to distribute (21:846) | Count 1s: Interstate travel in aid of racketeering and aiding and abetting (18:1952) | None | time served | Judge O'Toole |
| 98-10378 | USA v. Capano | 10/13/99 | Gregory Capano | Count 1: Possession of marijuana with intent to distribute (21:841(a)(1)) | Count 1s: Use of communication facility in furtherance of a controlled substance offense (21:843(b)) | None | 48 months imprisonment | Judge Wolf |
| 98-10389 | USA v. Calderon | 3/15/99 | Jose Amable Perez | Count 1: Conspiracy to distribute and possess with intent to distribute cocaine and heroin (21:846) | Count 1s: Illegal re-entry of deported alien (8:1326) | None | 28 months imprisonment on each count; concurrently | Judge Gertner |
| 98-10396 | USA v. Costello | 5/17/99 | Lawrence J. Costello Jr. | Count 1: Conspiracy to commit bank robbery (18:371) Count 2: Armed bank robbery (18:2113(a), 18:2113(d), 18:2) Count 3: Use and carrying of a firearm during and in relation to a crime of violence; aiding and abetting (18:924(c), 18:2) | Count 1s: Conspiracy to commit bank robbery (18:371) Count 2s: Armed bank robbery; aiding and abetting (18:2113(a)(D), 2) Count 3s: Use in carrying of a firearm during and in relation to a crime of violence; aiding and abetting (18:924(c)(1)(A)(ii), 2) | Counts 1-3 dismissed | 180 months imprisonment | Judge O'Toole |
| 98-10398 | USA v. Perrone | 9/13/99 | Mark J. Perrone | Counts 1-2: Filing a materially false income tax return (26:7206(1)) | Counts 1s-2s: Willful failure to file the judicial income tax return (26:7203) | Counts 1-2 dismissed | 24 months probation | Judge Stearns |
| 99-10013 | USA v. Grenler | 4/20/99 | Richard Grenler | Counts 1 and 2: Bank Robbery; Aiding and Abetting (18:2113(a), 2) | Count 1s: Armed Bank Robbery (18:2113(d), 2) Count 2s: Use and Carrying of Firearm (18:924(c), 2) | None | Count 1: 78 months imprisonment Count 2: 60 months imprisonment, to be served consecutively | Judge Gertner |
| 99-10026 | USA v. Hunter | 9/23/99 | John D. Hunter | Count 1: Felon in Possession of Firearm and Ammunition (18:922(g)(1)) Count 2: Possession with Intent to Distribute Cocaine Base (21:841(a)(1)) Count 3: Carrying a Firearm During and in Relation to Drug Trafficking Crime (18:924(c)(1)) | Count 1s: Possession of Firearm with an Obliterated Serial Number (18:922(k)) Count 2s: Carrying a Firearm During and in Relation to Drug Trafficking Crime (18:924(c)(1)) | Counts 1-3 dismissed | 120 months imprisonment | Judge Saris |

| Docket # | Case Title | Filing Date | Defendant's Name | Original Charge | Charge Bargain | Charges Terminated | Sentence | Judge |
|---|---|---|---|---|---|---|---|---|
| 99-10034 | USA v. Souza | 3/29/99 | Cassio Kennedy Souza | Counts 1-2 Bank Fraud (18:1344) Counts 3-4 Bank Fraud (18:1344) | Counts 1s-2s: Bank Fraud (18:1344) Counts 3s-4s: Bank Fraud (18:1344) Count 5s: Bank Fraud (18:1344) Counts 6s-7s: Bank Fraud (18:1344) | None | 4 months imprisonment on each count to be served consecutively | Judge O'Toole |
| 99-10038 | USA v. Phillips | 2/22/99 | Juan Bautista Phillips | Count 1: Posses with Intent to Distribute a Controlled Substance (21:841(a)(1)) | Count 1s: Failure to Appear (18:3146(a)(1)) | Count 1 dismissed | 3 years imprisonment and fine of $3000 | Judge Lindsay |
| 99-10068 | USA v. Rodriguez | 5/25/99 | Iluminado Rodriguez | Count 1: Felon in Possession of Firearm and Ammunition (18:922(g)(1) | Count 1s: Transporting Firearms into State of Residence (18:922(a)(3)) | Count 1 dismissed | 50 months imprisonment | Judge O'Toole |
| 99-10078 | USA v. Barnes | 9/21/99 | Paula Byfield | Count 1: Conspiracy to Import Cocaine (21:963) | Count 1s: Importation of Cocaine (21:952(a)) | None | 8 months imprisonment | Judge Lindsay |
| 99-10156 | USA v. Reardon | 5/14/99 | Robert M. Reardon | Count 1: Interstate Transportation of Stolen Property (18:2314, 2) | Count 1s: Conspiracy (18:371) | None | Defendant paid $386,000 in restitution and received 3 years worth of probation | Judge Woodlock |
| 99-10166 | USA v. Burns | 11/9/99 | Michael T. Burns | Count 1: Conspiracy (18:371) Count 2: Bank Robbery (18:2113(a), 2) | Counts 1s-3s: Bank Robbery (18:2113(a)) | None | Count 1: 60 months Count 2 and Counts 1s-3s: 70 months served concurrently | Judge Lindsay |
| 99-10172 | USA v. Damien | 10/21/99 | Charles Guarino | Count 1: Conspiracy to Possess with Intent to Distribute Heroin (21:846) | Count 1s: Use of Communications Facility to Facilitate a Drug Offense (21:843) | None | 5 months imprisonment | Judge O'Toole |
| 99-10180 | USA v. Toure | 11/29/99 | Nana Toure | Count 1: Bank Fraud (18:1344) | Count 1s: Bank Larceny (18:2113(b)) | None | Count 1: 2 years imprisonment | Judge Gertner |
| 99-10181 | USA v. McClain | 10/7/99 | Kevin Thomas | Count 3: Engaging in the Business of Dealing Firearms without a License (18:922(a)(1)(A)) Counts 5-7: Felon in Possession of a Firearm (18:922(g)(1)) | Count 1ss-3ss: Possession of Stolen Firearms (18:922(j)) Count 4ss: Engaging in the Business of Dealing Firearms without a License (18:922(a)(1)(A)) | Counts: 1s-3s dismissed Count 3 dismissed Counts 5-7 dismissed | 96 months imprisonment | Judge Wolf |
| 99-10181 | USA v. McClain | 10/8/99 | Kevin Thomas | Count 3: Engaging in the Business of Dealing Firearms without a License (18:922(a)(1)(A)) Counts 5-7: Felon in Possession of a Firearm (18:922(g)(1)) | Count 1ss-3ss: Possession of Stolen Firearms (18:922(j)) Count 4ss: Engaging in the Business of Dealing Firearms without a License (18:922(a)(1)(A)) | Counts: 1s-3s dismissed Count 3 dismissed Counts 5-7 dismissed | 96 months imprisonment | Judge Wolf |
| 99-10181 | USA v. McClain | 11/15/99 | John Golden | Count 4: Felon in Possession of Firearm (18:922(g)(1)) | Count 1ss: Sale of Firearm to a Felon (18:922(d)(1)) | Count 4: dismissed | 33 months imprisonment | Judge Wolf |
| 99-10181 | USA v. McClain | 11/16/99 | John Golden | Count 4: Felon in Possession of Firearm (18:922(g)(1)) | Count 1ss: Sale of Firearm to a Felon (18:922(d)(1)) | Count 4: dismissed | 33 months imprisonment | Judge Wolf |
| 99-10264 | USA v. Guerrero | 8/20/99 | Bladimil Guerrero | Count 1:False Statements in Application for Passport (18.1542) | Count 1s: False Statements in Application and Use of Passport (18:1542) | None | 3 months imprisonment | Judge Saris |

| Docket # | Case Title | Filing Date | Defendant's Name | Original Charge | Charge Bargain | Charges Terminated | Sentence | Judge |
|---|---|---|---|---|---|---|---|---|
| 97-40009 | USA v. Carrozza | 11/1/99 | Anthony Ciampi | Count 1: RICO (18:1962(c))<br>Count 2: RICO (18:1962(d))<br>Count 3: Conspiracy to Commit Murder in Aid of Racketeering (18:1959)<br>Count 4: Use of Firearms (18:924(c), 2)<br>Count 5: Murder of Richard Devlin (18:1959, 2)<br>Count 6: Violent Crime/Drugs/Machine Gun (18:924(c), 2)<br>Count 7: Attempt to Murder and Assault with Dangerous Weapon-Richard Gillis (18:1959, 2)<br>Count 8: Violent Crime/Drugs/Machine Gun (18:18:924(c), 2)<br>Count 11: Accessory After the Fact of the Murder of Joseph Souza<br>Count 12: Attempt to Murder and Assault with Dangerous Weapon-Joseph C. Cirame (18:924(c), 2)<br>Count 13: Violent Crime/Drugs/Machine Gun (18:924(c), 2)<br>Count 16: Attempt to Murder and Assault with Dangerous Weapon-Steven Rossetti (18:1959, 2)<br>Count 17: Violent Crime/Drugs/Machine Gun (18:924(c), 2)<br>Count 22: Conspiracy to Murder Paul Strazzulla (18:1959)<br>Count 26: Accessory after the fact to the murder of Paul Strazzulla (18:3)<br>Count 27: Accessor after the fact to tampering with the witness (18:3)<br>Count 28: Conspiracy to murder Enriquo M. | Count 1s: Attempt to commit crime involving assault with a dangerous weapon (18:1959 and 2) | Count 1, 2, 4, 5, 7, 8, 11, 12, 13, 16, 17, 22, 26, 27, 28, 29, 30, 31, 32 | 216 months imprisonment | Judge Gorton |

| Docket # | Case Title | Filing Date | Defendant's Name | Original Charge | Charge Bargain | Charges Terminated | Sentence | Judge |
|---|---|---|---|---|---|---|---|---|
| 97-40009 | USA v. Carrozza | 11/3/99 | Michael P. Romano | Count 1: RICO (18:1962(c), 2) <br> Count 2: RICO (18:1962(d)) <br> Count 3: Conspiracy to Commit Murder in Aid of Racketeering (18:1959) <br> Count 4: Use of Firearms (18:924(c), 2) <br> Count 9: Murder of Joseph Souza (18:1959) <br> Count 10: Violent crimes/drugs/machine gun (18:924(c) <br> Count 12: Attempt to murder and assault with a dangerous weapon- Joseph C. Cirame (18:1959, 2) <br> Count 13: Violent crimes/drugs/machine gun (18:924(c),2) <br> Count 14: Attempt to murder and assault with a dangerous weapon- Michale P. Prochilo (18:1959, 2) <br> Count 15: Violent crimes/drugs/machine gun (18:924(c),2) <br> Count 16: Attempt to murder and assault with a dangerous weapon- Stephen Rossetti (18:1959, 2) <br> Count 17: Violent crime/drugs/machine guns (18:924(c),2) <br> Count 18: Attempt to murder and assault with a dangerous weapon- Timothy Larry O'Toole (18.1959, 2) <br> Count 19: Conspiracy to murder Matteo Trotto (18:1959) <br> Count 20. Attempt to murder and assault with a dangerous weapon- Matteo Trotto (18:1959, 2) <br> Count 21: Violent crime/drugs/machine gun (18:924(c),2) <br> Cou | Count 2s: Attempt to commit crime involving assault with a dangerous weapon (18:1959 and 2) | Counts 1, 2, 4, 9, 10, 12, 13, 14, 15, 18, 19, 20, 21, 31 | 252 months imprisonment | Judge Gorton |
| 98-40025 | USA v. Goldman | 5/27/99 | Eric S. Goldman | Count 1: Conspiracy to posses cocaine with intent to distribute (21:846) <br> Count 2: Possession of cocaine with intent to distribute and distribution of cocaine (21:841(a)(1)) <br> Count 3: Possession of cocaine with intent to distribute and distribution of cocaine; Aiding and Abetting (21:841(a)(1), 2) | Count 1s-2s: Use of communication facility to facilitate distributio of cocaine (21:843(b)) | Counts 1-3: dismissed | 1 year and one day imprisonment | Judge Gorton |
| 99-40001 | USA v. Barbieri | 5/14/99 | Paul Anthony Barbieri | Count 1: Making false claims against the United States (18:287) | n/a | n/a | n/a | Judge Gorton |
| 99-40002 | USA v. Malone | 5/17/99 | Jay Louis Malone | Count 1: False or fraudulent claims (18:287) | n/a | n/a | n/a | Judge Gorton |
| 99-40010 | USA v. Barbieri | 5/14/99 | Paul Anthony Barbieri | Count 1: Conspiracy (18:286.F) | n/a | none | 18 months imprisonment | Judge Gorton |

| Docket # | Case Title | Filing Date | Defendant's Name | Original Charge | Charge Bargain | Charges Terminated | Sentence | Judge |
|---|---|---|---|---|---|---|---|---|
| 99-40011 | USA v. Malone | 5/17/99 | Jay Louis Malone | Count 1: Conspiracy (18:286) | n/a | none | 27 months imprisonment | Judge Gorton |
| 00-10102 | USA v. Bates | 10/5/00 | Cornelius Bates | Count 1:Conspiracy to distribute marijuana (21:846) / Count 2: Engaging in continuing criminal enterprise (21:848) | Count 1s: Conspiracy to distribute cocaine (21:846) | none | n/a | Judge Cohen |
| 00-10134 | USA v. Hersey | 9/28/00 | Thomas Hersey | Count 1: Conspiracy to distribute cocaine (21:846) / Count 2: Possession of cocaine with intent to distribute and aiding and abetting (21:841(a)(1), 2) / Count 3: Possession of cocaine with intent to distribute (21:841(a)(1)) / Counts 4-6: Possession of cocaine with intent to distribute (21:841(a)(1)) / Count 7: Possession of cocaine with intent to distribute and aiding and abetting (21:841(a)(1), 2) | Count 1s: Conspiracy to distribute cocaine (21:846) / Counts 2s-7s: Possession of cocaine with intent to distribute (21:841(a)(1), 2) | none | 37 months imprisonment | Judge Wolf |
| 00-10143 | USA v. Ramos | 4/18/00 | Jose Ramos | Count 1: Possession of stolen firearm (18:922(j)) | n/a | none | 92 months imprisonment | Judge Young |
| 00-10146 | USA v. Wilder | 5/17/00 | Darren Wilder | Count 1: Possession of child pornography and forfeiture allegations (18:2252(A)(5)(B)) | Count 1s: Possession of child pornography (18:2252(A)(a)(5)(B)) | Count 1 dismissed | 27 months imprisonment | Judge Saris |
| 00-10166 | USA v. Conde | 12/12/00 | Hugo Conde | Count 1: Conspiracy to distribute marijuana (21:846) / Count 2: Possession of marijuana with intent to distribute and distribution of marijuana aiding and abetting (21:841(a)(1)) | Count 1ss: Conspiracy to distribute marijuana (21:846=CD.F) / Count 2ss: Possession of marijuana with intent to distribute and distribution of marijuana; aiding and abetting (21:841(a)(1))=CD.F / Count 3ss: Illegal re-entry of deported alien (8:1326.F) / Count 4s: Illegal re-entry of deported alien (8:1326) | none | n/a | Judge Bowler |
| 00-10179 | USA v. Hardy | 9/13/00 | Iman Hardy | Counts 1-2: Distribution of cocaine base (21:841(a)(1)) | Count 1s: Possession with intent to distribute and distribution of cocaine base (21:841(a)(1)=CD.F) / Count 2s: Possession with intent to distribute and distribution of cocaine base (21:841(a)(1)=CD.F) | none | n/a | Judge Young |
| 00-10184 | USA v. Gonzalez | 5/31/00 | Lissette Gonzalez | Count 1: Unlawful use of false identification document (18:1028(a)(7)) | n/a | none | Supervised release for 36 months | Judge Young |
| 00-10195 | USA v. Yeaton | 6/8/00 | Melanie Yeaton | Count 1: Conspiracy (18:371) | n/a | none | 3 years probation | Judge Zobel |
| 00-10202 | USA v. Luisi | 6/8/00 | Robert C. Luisi | Count 1: RICO-Substantive (18:1962(c)and 2) | n/a | none | n/a | Judge Lindsay |

| Docket # | Case Title | Filing Date | Defendant's Name | Original Charge | Charge Bargain | Charges Terminated | Sentence | Judge |
|---|---|---|---|---|---|---|---|---|
| 00-10245 | USA v. Weeks | 7/12/00 | Kevin J. Weeks | Count 1: Racketeering (18:1962(d)) Count 2:Racketeering (18:1962(c)) Count 3: Extortion conspiracy (18:1951) Count 4: Extortion (18:1951) Count 5: Money laundering conspiracy (18:1956) | n/a | none | n/a | Judge Stearns |
| 00-10256 | USA v. Smith | 7/11/00 | David Smith | Count 1: Interstate travel in aid of racketeering; aiding and abetting (18:1952(a)(3)) | n/a | none | 60 months imprisonment | Judge Lindsay |
| 00-10260 | USA v. Neves | 12/7/00 | George Neves | Count 1: Conspiracy to posses cocaine with intent to distribute and to distribute cocaine base (21:846) Count 2: Possession of cocaine with intent to distribute and distribute and distribution of cocaine (21:841(a)(1)) Count 3: Possession of cocaine with intent to distribute and distribution of cocaine and aiding and abetting (21:841(a)(1), 18:2) | Count 1s: Misprison of felony (18:4) | none | n/a | Judge Saris |
| 00-10261 | USA v. Gitschier | 7/25/00 | Gerald G. Gitschier | Count 1: Bank Robbery (18:2113(a)) | n/a | none | n/a | Judge Harrington |
| 00-10263 | USA v. Riviera | 7/25/00 | Ramon Riviera | Count 1: Felon in possession of firearm and ammunition (18:922(g)(1)) | n/a | none | n/a | Judge O'Toole |
| 00-10270 | USA v. Hoyos | 7/28/00 | Luis Carlos Hoyos | Count 1: Misuse of passport (18:1544) | n/a | none | 63 days imprisonment with credit for time served | Judge Harrington |
| 00-10273 | USA v. Perez | 7/31/00 | Victor Perez | Count 1: Unlawful use of communication facility to facilitate distribution of heroin (21:843(b)) | n/a | none | n/a | Judge Young |
| 00-10274 | USA v. Whooten | 7/26/00 | Paul Whooten | Count 1: Bank Robbery (18:2113(a)) Count 2-4: Interference with commerce by bank robbery (18:1951) Count 5: Bank Robbery (18:2113(a)) | n/a | none | 140 months imprisonment with credit for time served from 8/13/99 | Judge Saris |
| 00-10279 | USA v. Figliolini | 8/3/00 | Jon Figliolini | Count 1: Possession of heroin with intent to distribute (21:841(a)(1)) | n/a | none | n/a | Judge O'Toole |
| 00-10289 | USA v. Salmons | 8/10/00 | James Salmons | Count 1: Conspiracy (18:371) | n/a | none | 60 months imprisonment | Judge Zobel |
| 00-10292 | USA v. Owens | 8/10/00 | Scott Owens | Count 1: Using a communication facility to facilitate the commission of a felony under the controlled substance act (21:843(b)) | n/a | none | 42 months | Judge Lindsay |

| Docket # | Case Title | Filing Date | Defendant's Name | Original Charge | Charge Bargain | Charges Terminated | Sentence | Judge |
|---|---|---|---|---|---|---|---|---|
| 00-10294 | USA v. Figueroa-Baerga | 8/11/00 | Fernando Figueroa-Baerga | Count 1: Conspiracy to posses cocaine with intent to distribute and to distribute cocaine base and heroin (21:846) Count 2. Possession with intent to distribute and distribution of cocaine base; aiding and abetting (21:841(a)(1), 2) | n/a | none | n/a | Judge Lasker |
| 00-10299 | USA v. Threatt | 8/17/00 | Sedale E. Threatt | Count 1: Failure to pay child support (18:228) | n/a | none | 16 months imprisonment | Judge Wolf |
| 00-10300 | USA v. Geronimo | 8/17/00 | Pablo Geronimo | Count 1: Conspiracy to distribute, and to possess with intent to distribute cocaine (21:846) Counts 2-5: Possession with intent to distribute, and distribution of cocaine; aiding and abetting (21:841(a)(1), 2) | n/a | none | 37 months imprisonment | Judge Lindsay |
| 00-10346 | USA v. Buono | 9/15/00 | Carlo Buono | Count 1: Distribution of cocaine (21:841(a)(1)F) | n/a | none | n/a | Judge O'Toole |
| 00-10347 | USA v. Mejia | 9/19/00 | Robert Mejia | Count 1: Conspiracy to distribute and to possess with intent to distribute heroin (21:846) | n/a | none | 36 months imprisonment with credit for time served | Judge Harrington |
| 00-10351 | USA v. Acevedo | 9/22/00 | Maria Acevedo | Count 1: Unlawful maintenance of manufacturing operation (21:856(a)(1)) | n/a | none | n/a | Judge Young |
| 00-10359 | USA v. Padilla | 9/27/00 | Saul Padilla | Count 1: Money laundering (18:1958-7471.F) | n/a | none | n/a | Judge O'Toole |
| 00-10367 | USA v. McKenzie | 9/21/00 | Valerie J. McKenzie | Count 1: Obstruction of mail (18:1701) | n/a | none | n/a | Judge Keeton |
| 98-10128 | USA v. Knight | 5/17/00 | Michael Knight | Counts 1-2: Possession with intent to distribute and distribution of cocaine (21:841(a)(1)) | Count 1s: Conspiracy to possess marijuana (21:846) Count 2s: Distribution of cocaine (21:841(a)(1)) | none | n/a | Judge O'Toole |
| 98-10185 | USA v. Lacy | 4/21/00 | Theron Davis | Count 1: Conspiracy to posses cocaine base with intent to distribute (21:846) Count 11: Possession with intent to distribute and distribution of cocaine base (21:841(a)(1)) Count 16: Possession with intent to distribute and distribution of cocaine base (21:841(a)(1)) | Counts 1ss-2ss: Use of communication facility to facilitate drug transaction (21:843(b)) Count 6s: Drug conspiracy (21:846) Count 15s: Possession with intent to distribute and distribution of cocaine base, aiding and abetting (21:841(a)(1)), 18:2) Count 20s: Possession with intent to distribute and distribution of cocaine base (21:841(a)(1)) | Count 1, 6s, 11, 15s, 16, 20s: dismissed | Count 1: 48 months imprisonment Count 3: 37 months imprisonment | Judge Gertner |
| 99-10021 | USA v. Millan | 2/1/00 | Jorge Diaz | Count 1: Conspiracy to import cocaine (21:963) Count 2: Importation of cocaine; aiding and abetting (21:952(a), 2) | Count 1s: Conspiracy to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 (18:1956(h)) | none | 18 months imprisonment | Judge Wolf |

| Docket # | Case Title | Filing Date | Defendant's Name | Original Charge | Charge Bargain | Charges Terminated | Sentence | Judge |
|---|---|---|---|---|---|---|---|---|
| 99-10066 | USA v. Mills | 11/21/00 | Ryan Thomas | Count 1: Conspiracy to distribute cocaine base (21:846) Count 14: Money laundering (18:1957) | Count 1s: Racketeering (18:1962(a)) | none | n/a | Judge Young |
| 99-10113 | USA v. Riviera | 9/11/00 | Manuel O. Riviera | Count 1: Conspiracy to possess cocaine with intent to distribute (21:846) Counts 2-4: Possession with intent to distribute and distribution of cocaine, aiding and abetting (21:841(a)(1), 2) Count 5: Conspiracy to possess cocaine with intent to distribute (21:846) | Count 1s: Conspiracy to possess cocaine with intent to distribute (21:846=CD.F) Count 2s: Possession with intent to distribute and distribution of cocaine, aiding and abetting (21:841(a)(1)=CD.F) Counts 3s-4s: Possession with intent to distribute and distribution of cocaine; aiding and abetting (21:841(a)(1)=CD.F) Count 5s: Conspiracy to possess cocaine with intent to distribute (21:846=CD.F) | none | n/a | Judge Gertner |
| 99-10223 | USA v. Estrella | 5/16/00 | Fred Casimir | Count 1: Conspiracy to distribute marijuana (21:846) | Count 1s: Misprision of felony (18:4) | none | 3 years probation and fine of $1000 | Judge Woodlock |
| 99-10226 | USA v. Bartley | 12/7/00 | Joseph Bartley | Count 1: Felon in possession of firearm and ammunition (18:922(g)(1)) | Count 1s: Possession of a stolen firearm (18:922(j)) | none | n/a | Judge Keeton |
| 99-10239 | USA v. Cano | 2/23/00 | Alan G. Cano | Count 1: Interstate travel with intent to engage in sex with a minor (18:2423(b)) | Count 1s: Possession of child pornography (18:2252(a)(5)(B)) | none | 30 months imprisonment | Judge O'Toole |
| 99-10247 | USA v. Leung | 1/13/00 | Kwok Kwong Leung | Counts 1-3: Attempt to commit interstate transportation of fish taken in violation of law; aiding and abetting (16:3372(A)(5), 2) Counts 4-6: False labelling for interstate transportation; aiding and abetting (16:3372(d)(2), 2) | Count 1s: Attempt to commit interstate transportation of fish taken in violation of state law (16:3372(a)(4)) | none | Probation for 2 years | Judge Gertner |
| 99-10256 | USA v. Gomez | 12/19/00 | Jacqueline Cespedes | Count 1: Conspiracy to distribute marijuana (21:846) Count 2: Conspiracy to commit money laundering (18:1956(h)) | Count 1ss: Conspiracy to distribute marijuana (21:846=CD.F) Count 2ss: Conspiracy to commit money laundering (18:1956(h)) | none | n/a | Judge O'Toole |
| 99-10257 | USA v. Hernando-Ovalle | 12/13/00 | Kevin Coppola | Count 1: Conspiracy to distribute, and to possess with intent to distribute cocaine and cocaine base (21:846) | Count 1s: Conspiracy to distribute and to possess with intent to distribute cocaine (21:846=CD.F) | Count 1 dismissed | 24 months imprisonment with credit for time served | Judge Young |
| 99-10266 | USA v. Cunningham | 10/5/00 | Paul Cunningham | Count 1: Felon in possession of firearm (18:922(g)(1)) | Count 1s: Possession of stolen firearm (18:922(j)) | Count 1 dismissed | 108 months Imprisonment | Judge Young |
| 99-10272 | USA v. Figueroa-Baerga | 8/29/00 | Fernando Figueroa-Baerga | Count 1: Conspiracy to distribute and possess with intent to distribute cocaine, cocaine base, and heroin (21:846) Count 2: Possession with intent to distribute, and distribution of cocaine base; aiding and abetting (21:841(a)(1), 2) | Count 1s: Conspiracy to distribute and to possess with intent to distribute cocaine, cocaine base, and heroin (21:846=CD.F) Count 2s: Distribution and possession with intent to distribute cocaine base; aiding and abetting (21:841(a)(1)=CD.F) | Count 1-2: dismissed | 42 months imprisonment | Judge Lasker |

| Docket # | Case Title | Filing Date | Defendant's Name | Original Charge | Charge Bargain | Charges Terminated | Sentence | Judge |
|---|---|---|---|---|---|---|---|---|
| 99-10296 | USA v. Melzer | 2/23/00 | Robert Melzer | Counts 1-2: Bank Robbery; aiding and abetting (18:2113(a), 2) | Counts 1s-2s: Bank Robbery (18:2113(a)) Count 3ss: Bank Robbery (18:2113(a)) | Counts 1-2: dismissed Count 3s: dismissed | 22 months imprisonment | Judge Saris |
| 99-10296 | USA v. Melzer | 3/6/00 | Robert Melzer | Counts 1-2: Bank Robbery; aiding and abetting (18:2113(a), 2) | Counts 1s-2s: Bank Robbery (18:2113(a)) Count 3ss: Bank Robbery (18:2113(a)) | Counts 1-2: dismissed Count 3s: dismissed | 22 months imprisonment | Judge Saris |
| 99-10311 | USA v. McDonough | 3/30/00 | Nicholas J. McDonough | Count 1: Felon in possession of firearm or ammunition (18:922(g)(1)) | Count 1s: Knowing possession of a stolen firearm (18:922(j)) | none | 84 months imprisonment | Judge O'Toole |
| 99-10332 | USA v. Theberge | 10/26/00 | Dominick Plourde | Count 1: Conspiracy to possess with intent to distribute marijuana (21:846) Count 2: Money laundering conspiracy (18:1956(h)) | Count 1ssss: Conspiracy to possess with intent to distribute marijuana (21:846=CD.F) Count 2ssss: Suscribing a false tax return (26:7206(1),F) | none | n/a | Judge Keeton |
| 99-10332 | USA v. Theberge | 11/7/00 | Edward Piszcz | Count 1: Conspiracy to possess with intent to distribute marijuana (21:846) Count 2: Money laundering conspiracy (18:1956(h)) | Count 1ssss: Conspiracy to possess with intent to distribute marijuana (21:846=CD.F) Count 2ssss: Suscribing a false tax return (26:7206(1),F) | none | n/a | Judge Keeton |
| 99-10357 | USA v. Lowe | 3/16/00 | Robert S. Lowe | Counts 1-6: Making threats by mail to destroy property by fire or explosives (18:844(e)) | Count 1s: Making threats by mail to destroy property by fire or explosives (18:844(E)e) | none | 2 years probation | Judge Tauro |
| 99-10381 | USA v. Castillo-Ferrer | 3/22/00 | Pedro Antonio Castillo-Ferrer | Count 1: Interstate transmission of threat to injure, kill, or damage property by explosion (18:844(e)) Count 2: Threat to kidnap (18:875(C)) Count 3: Threat to injure by explosive (18:844(e)) Count 4: Threat to kidnap (18:875(c)) Count 5: Threat to injure by explosive (18:844(e)) Count 6: Threat to kidnap (18:875(c)) Count 7: Threat to injure by explosive (18:844(e)) Count 8: Threat to kidnap (18:875(c)) Count 9: Threat to injure by explosive (18:844(e)) Count 10: Threat to kidnap (18:875(c)) Counts 11-12: Threat to injure by explosives (18:844(e)) | Counts 1s-4s: Interstate transmission with intent to threaten (47:223(a)(C)) | none | 11 months on all counts | Judge Gertner |

| Docket # | Case Title | Filing Date | Defendant's Name | Original Charge | Charge Bargain | Charges Terminated | Sentence | Judge |
|---|---|---|---|---|---|---|---|---|
| 99-10383 | USA v. Gendraw | 12/8/00 | Maurice Payne | Count 1: Conspiracy to distribute cocaine base (21:846); Count 4: Distribution of cocaine base; aiding and abetting (21:841(a)(1)); Count 5: Distribution of cocaine base (21:841(a)(1)); Count 6: Distribution of cocaine base aiding and abetting (21:841(a)(1)) | Count 1ss-3ss: Use of a communication facility to facilitate a drug transaction (21:843(b)); Count 4s: Distribution of cocaine base; aiding and abetting (21:841(a)(1)); Count 5s: Distribution of cocaine base (21:841(a)(1)); Count 6s: Distribution of cocaine base, aiding and abetting (21:841(a)(1), 18.2) | none | n/a | Judge Tauro |
| 99-10392 | USA v. Simmons | 12/14/00 | Bernard Simmons | Count 1: Possession of cocaine base with intent to distribute/distribution (21:841(a)(1)) | Count 1ss-2ss: Possession of cocaine base with intent to distribute/distriubiton (21:841(a)(1)) | none | n/a | Judge Harrington |
| 99-10395 | USA v. Reid | 3/30/00 | Roy Reid | Count 1-4: Possession of cocaine base with intent to distribute and distribution (21:841(a)(1)) | Count 1s: Possession of cocaine base with intent to distribute (21:841(a)(1)) | none | 30 days imprisonment | Judge Lasker |
| 99-10416 | USA v. Correa | 4/12/00 | Robert Correa | Count 1: Felon in possession of a firearm (18:922(g)(1)) | Count 1ss: Felon in possession (18:922(g)(1)); Count 2ss: Interference with commerce (18:1951(a)); Count 3ss: Use of gun during violent crime (18:924(c)) | none | n/a | Judge Harrington |
| 99-10421 | USA v. Sullivan | 4/5/00 | Jennifer Ann Sullivan | Count 1: Conspiracy (18:371); Count 2: Perjury (18:1621) | Count 1s: Conspiracy (18:371); Count 2s: Perjury (18:1621) | none | 24 months of probation | Judge Saris |
| 99-10426 | USA v. Rendon | 10/24/00 | Manuel Rendon | Count 1:Conspiracy to distribute and to possess with intent to distribute marijuana (21:846); Count 2: Attempted possession of marijuana with intent to distribute; aiding and abetting (21:841(a)(1), 846)); Count 4: Attempted possession of marijuana with intent to distribute; aiding and abetting (21:841(a)(1), 846) | Count 1s: Conspiracy to distribute and to possess with intent to distribute marijuana (21:846); Count 2s: Attempted possession of marijuana with intent to distribute; aiding and abetting (21:841(a)(1), 846, 18:2); Count 3s: Attempted possession of marijuana with intent to distribute; aiding and abetting (21:841(a)(1), 846, 18:2) | none | n/a | Judge Saris |
| 00-30029 | USA v. Hoff | 12/15/00 | Lewis Hoff | Count 1: Transportation of stolen money (18:2314); Count 2: Willful failure to file income tax returns and pay taxes (26:7203) | Count 1s: Transportation of stolen money (18:2314); Count 2s-3s: Willful failure to file income tax returns and pay taxes (26:7203) | none | n/a | Judge Freedman |

| Docket # | Case Title | Filing Date | Defendant's Name | Original Charge | Charge Bargain | Charges Terminated | Sentence | Judge |
|---|---|---|---|---|---|---|---|---|
| 00-40001 | USA v. Falcon | 10/25/00 | Jose Falcon | Counts 1-5: Possession of cocaine base with intent to distribute and distribution of cocaine base 18:2 Aiding and abetting (21:841(a)(1)) | Count 1s-5s: Possession of cocaine base with intent to distribute and distribution of cocaine base, 18:2 Aiding and abetting (21:841(a)(1)) Count 1ss: Controlled substance manufacture (21:841(B)=CM.F) | none | 97 months imprisonment | Judge Gorton |
| 98-40035 | USA v. Ventura | 2/3/00 | Wanda Justiniano | Count 1:Conspiracy to possess cocaine base and heroin with intent to distribute (21:846) Count 2. Distribution of cocaine base; aiding and abetting (21:841(a)(1), 2) | Count 1s: Possession of cocaine base with intent to distribute; aiding and abetting (21:841(a)(1)) | none | 16 months imprisonment | Judge Gorton |
| 99-40029 | USA v. Quinones | 11/15/00 | Rosa Marie Cruz-Monge | Count 1: Conspiracy to possess cocaine base with intent to distribute cocaine base (21:846) Count 3. Distribution of cocaine base and aiding and abetting (21:841(a)(1), 18:2) Count 6: Distribution of cocaine base and aiding and abetting (21:841(a)(1), 18:2) Count 7: Distribution of cocaine base and aiding and abetting (21:841(a)(1), 18:2) Count 9: Distribution of cocaine base and aiding and abetting (21:841(a)(1), 18:2) | Count 1s: Conspiracy to possess controlled substance (21:846=CP.F) | none | n/a | Judge Gorton |

## Appendix C

The consequences of fact bargaining on our system of justice are hard to overstate. "Facts are like flint," judges say, and their proper ascertainment is the crowning goal of our entire adversary system. When parties can "make up" their own facts with little fear of discovery and no effective sanction, however, courts no longer adjudicate actual cases and controversies, as re-

quired by the Constitution. They simply ratify the government's secret bargains with defendants, thus lending (and dissipating) their moral authority as an independent third branch of government.

Moreover, when the government is rarely, if ever, put to its proof, the incentives for it squarely to turn its corners are correspondingly reduced and government overreaching can conveniently be hidden in a plea bargain that seems factually reasonable.

Indeed, two astute observers have accurately described today's plea bargaining as follows:

Plea bargaining gets away from the facts. First, as is widely recognized, justice is not done when premeditated murder, for example, is reduced to a lesser charge. But, more fundamentally and perhaps less obvious, plea bargains corrupt the prosecutorial function by severing it from the discovery of truth.

The practice of having people admit to what did not happen in order to avoid charges for what did happen creates a culture that, as it [ ] develops, eventually permits prosecutors to bring charges in the absence of crimes. As a little yeast leavens the whole loaf, systematized falsehoods about crimes corrupt the entire criminal justice process.

.        .        .        .        .

Plea bargaining puts the defendant at the mercy of his lawyer's negotiating skills instead of the judgment of a jury. Ostensibly, both the defense lawyer and the prosecutor prepare the case for trial by examining physical evidence, interviewing witnesses, and scheduling court dates. In reality, however, the defense and prosecution are scoping out the strengths of their relative positions in order to arrive at a deal.

A subtle dialogue proceeds in a game of lawyer's poker. Maybe the defense attorney has a reputation for being formidable at trial. The club sitting on the defense attorney's shelf is the threat "We'll see you in court." But whenever the defense lawyer lifts the club, the prosecutor knows that his counterpart may well be bluffing. Neither side really wants a trial. Trials are costly and uncertain, take too much time and work, and interfere with everything else on each lawyer's "to do" list. Even a defendant who wants a jury trial may be pressured to the contrary by a disinclined lawyer.

In effect, collusion is going on between the prosecution and defense, and the defendant learns that if he will plead guilty to a lesser charge, the prosecution will not try to convict the defendant on the charge for which the defendant was arrested. Pressures on a defendant can be overwhelming. They are well illustrated, for example, by the defendant who told the judge (*North Carolina v. Alford*, 400 U.S. 25, 28[, 91 S.Ct. 160, 27 L.Ed.2d 162] [1970]), "I ain't shot no man, but ... I just pleaded guilty because they said if I didn't they would gas me for it."

.        .        .        .        .

The risks of a jury trial can appear too great to all parties. An array of unknowables increases the uncertainty of trial. Questions loom for the defendant: for instance, How good is my lawyer and how irritated will my lawyer be if I reject the plea? Some defense lawyers dislike the confrontation of trials and prefer using their skills in negotiation to butting heads with prosecutors. They hesitate to damage their relationship with a prosecutor with whom they may be negotiating future pleas.

Trials are time-consuming for defense lawyers and drain energy from the law firm that could otherwise be devoted to other clients. Moreover, a lost trial can hurt the lawyer's reputation, but a plea resulting in a reduced charge does not. The prosecutor knows this and takes it into account in arriving at an offer.

Similarly, the defense attorney knows that the prosecutor cannot take every case to trial and has pressures from the judge not to let the court docket build.

Defendants assess whether they can afford to keep on paying lawyers during a trial. An indigent defendant with a public defender may wonder if the public defender, who is dependent on the court to assign him cases, has the inclination to mount a spirited defense. Judges contending with crowded dockets are inclined to assign cases to public defenders who are content to settle cases with pleas instead of taking them to trial.

In effect, coercive pressures push all parties to a settlement in which the accused admits to having committed a fictional offense in order to avoid being tried for a real one. The crime that is punished is in fact created by negotiation. Thus, the process works to create a lie that can be accepted by all parties, including the judge, who perfunctorily asks the defendant to state that no deals prompted the plea.

Paul Craig Roberts & Lawrence M. Stratton, *The Tyranny of Good Intentions:*

*How Prosecutors and Bureaucrats Are Trampling the Constitution in the Name of Justice* 87–89 (2000).

One need not agree with their further conclusion that "[i]t is only a short step from creating a fictional crime out of a real one to creating a fictional crime out of thin air," [40] *id.* at 89, to be concerned with the public's perception, since our government **does** on occasion so misbehave, *e.g., United States v. Salemme,* 91 F.Supp.2d 141 (D.Mass.1999) (Wolf, J.) (revealing FBI corruption that resulted in repeated frauds on this Court), *rev'd on other grounds sub nom. United States v. Flemmi,* 225 F.3d 78 (1st Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1137, 148 L.Ed.2d 1002 (2001); *United States v. Knott,* Crim No. 98–40022, slip op. at 11–14 (D.Mass. July 27, 2000) (Gorton, J.) (awarding attorneys' fees to defendants as result of "vexatious" conduct by United States).

While the evils of fact bargaining have not yet emerged into the public consciousness, it lies at the heart of the derision bordering on contempt with which knowledgeable observers in this District today regard our approach to sentencing. As one editorialist has put it:

[T]he federal government's ludicrous sentencing guidelines ... hammer convicts with little consideration for the circumstances of the crime.

Worse, much worse, the guidelines have created a system in which high-level defendants are able to trade infor-

---

**40.** Roberts and Stratton reason that the step "from creating a fictional crime out of a real one to creating a fictional crime out of thin air"

isn't taken all at once. When the option of plea bargaining first surfaces, it is considered by everyone involved as a way of meting out punishment in a timely way. But with the passage of time, several things happen. As plea bargaining takes over from jury trials, little police work is tested

in a courtroom before judge and jury. Prosecutors lose touch with the quality of the police investigative work that is the basis of indictments, and the police learn that their work has no more chance of a courtroom test than one in ten or one in twenty. Gradually the incentive to find a suspect becomes more compelling than the incentive to find the guilty person.

Roberts & Stratton, *supra,* at 89.

mation for reduced charges and, therefore, reduced sentences. Suspects at the bottom of the food chain, those with nothing to trade, often face the most serious charges and the harshest penalties. It's justice stood on its head.

Adrian Walker, *Injustice Is Served*, Boston Globe, Oct. 21, 2000, at B1. *See generally* David Rovella, *Sentences Dip Below Guidelines More Often*, Nat'l L.J., Nov. 13, 2000, at A1 (" 'It's clear that federal judges have been searching for ways to circumvent the strictness of the guidelines.' " [quoting Marc Mauer, Assistant Director of The Sentencing Project] ).

As the power of the Executive over criminal sentencing has grown relative to that of the other two branches of government, so too has cynicism over our methods of law enforcement. *See* Harvey A. Silvergate, *Book Review*, 20 Cato J. 291, 292 (2000) (reviewing Paul Craig Roberts & Lawrence M. Stratton, *The Tyranny of Good Intentions: How Prosecutors and Bureaucrats Are Trampling the Constitution in the Name of Justice* [2000] ) ("We live in a time of sharply decreasing faith in the criminal justice system."); William J. Stuntz, *O.J. Simpson, Bill Clinton, and the Transsubstantive Fourth Amendment*, 114 Harv. L.Rev. 842, 842–43 (2001). This may, perhaps, explain the steady rise in acquittals in federal criminal trials so that today nearly one in four defendants who goes to trial is acquitted.

**Acquittal Rate of All Defendants Going to Trial**

Office of Management Coordination and Planning (2000). Curbing fact bargaining thus serves to revitalize and strengthen all three branches of government while tending to restore the public's confidence that we are actually pursuing real world justice.

**Appendix D**

What can be done about fact bargaining? My initial efforts to combat it appear, in retrospect, to have been wrong headed.

Fearing the local disparities generated by such conduct, wherever I saw an opportunity I imposed sentences commensurate

with the national statistics for the particular crime. This, I thought, best accomplished the stated goals of the Sentencing Guidelines since the average of thousands of sentences nationwide reflects the actual average sanction for the conduct in question and provides a base line to move up or down in a case-specific fashion. The First Circuit rebuffed this approach, criticizing the very statistics I found most persuasive. *United States v. Martin*, 221 F.3d 52, 57–58 (1st Cir.2000) ("[T]he fact that the national median for a broadly stated offense type may be above or below a particular defendant's [guideline sentencing range] cannot be used to justify a sentencing departure. Departures based on these kinds of perceived inequities 'would contradict hopelessly the guidelines' structure and theory.'" [quoting *United States v. Snyder*, 136 F.3d 65, 70 (1st Cir.1998)] ).

Next, whatever the bargain, I resolved to sentence in accord with the actual facts as I found them after the hearing. This, I thought, carries out the "real offense" goals of guideline sentencing. Such an approach, however, encounters unexpected pitfalls. *United States v. Santo*, 225 F.3d 92, 97–99 (1st Cir.2000) (holding trial court in error for failing to advise defendant of applicable minimum mandatory sentence at time of plea even though both parties had advised the court that a different minimum mandatory sentence was applicable).

Burned in *Santo*, I've hit upon a different approach which may actually reduce fact bargaining, though it creates different problems. Today, wherever possible, I encourage a defendant to ask for a pre-plea pre-sentence report, *e.g., United States v. Molloy*, Crim. No. 00–10077, Tr. of Status Conference at 4–9, 14–15 (Sept. 19, 2000); *United States v. Chue*, Crim. No. 00–10243, Tr. of Arraignment at 2–16, 18–22 (Sept. 26, 2000), and I've worked it out with our superb Probation Office to pre-

pare such reports in a month's time. As these reports are independently prepared by a skilled probation officer from data equally available to the prosecution and the defense, they largely frustrate the incentive of the parties to "make up" their own version of the offense. Naturally, the Office of the United States Attorney hates this strategy as it reduces the government's freedom of maneuver. Letter from Donald K. Stern, United States Attorney, to the Honorable William G. Young (Oct. 13, 2000) (on file in chambers).

So far so good.

It appears, however, that the benefits obtained through pre-plea pre-sentence reports are outweighed in circumstances where they appear to be employed simply to delay the trial. I don't request them in such circumstances.

One other facet of the use of pre-plea pre-sentence reports comes as something of a surprise to me. I had thought I was building into the system a procedural protection for a defendant—a means of making a truly informed choice concerning whether to give up one's liberty. Actual practice, however, causes some concern. Since I've started the practice, in cases where everyone expects a plea, more than one defendant, upon reading the pre-plea pre-sentence report and seeing in stark arithmetic black-and-white, the expected calculations of her sentence, has sought at once to fire her attorney, apparently hoping against hope to "work out" something better. *See, e.g., United States v. Woodard*, Crim. No. 99–10393, Tr. of Plea & Related Hr'g at 2 (Jan. 16, 2001). This, of course, requires yet a different type of hearing, counseling, and determination. *United States v. Prochilo*, 187 F.3d 221 (1st Cir.1999) (error to deny defendant's pro se complaint about counsel without court inquiry). On balance, however, pre-plea pre-sentence reports appear to be the

best—if not the only—effective means of combating the evils of fact bargaining.